James O. Latturner, Esq.
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
jlatturner@edcombs.com

Ethan Preston, Esq. (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Douglas J. Campion, Esq. (75381)
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
(619) 299-2091 (telephone)
(619) 858-0034 (facsimile)
doug@djcampion.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT FOR

## THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 11-md-02295-JAH-BGS<br><br>Member cases:<br> All member cases<br><br>Hon. John A. Houston<br>Hon. Bernard G. Skomal<br><br>**NATIONWIDE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT** |

# **TABLE OF CONTENTS**

I.   Procedural Background ..................................................................................... 1

II.  The FACC Alleges Specific Details about PRA Inc., Stern, and PRA LLC's
Relationship ...................................................................................................... 1

    A.   Plaintiffs Alleges PRA Inc. and Stern's Direct Involvement in PRA LLC's
    TCPA Violations........................................................................................ 1

    B.   Plaintiffs' Facts Supporting a Corporate Veil-Piercing Theory ............... 3

    C.   Plaintiffs Allege PRA Inc. and Stern Ratified PRA LLC's TCPA
    Violations .................................................................................................. 3

III. The FACC Sufficiently Alleges That PRA Inc. and Stern Are Liable Under the
TCPA .................................................................................................................. 4

    A.   Plaintiffs Sufficiently Allege Stern and PRA Inc. Are Directly and
    Vicariously Liable ..................................................................................... 5

        1.   Defendants Advocate Inapposite Agency Tests ........................... 9

        2.   Defendants Do Not Distinguish *In re Jiffy Lube* ...................... 11

        3.   The FACC Makes Factual Allegations, Not Legal Conclusions ............. 12

        4.   Defendants Do Not Distinguish *j2 Global* ............................... 13

        5.   PRA Inc.'s Involvement with PRA LLC Is Not Consistent with
        "Investor Status" ....................................................................... 13

    B.   Plaintiffs Sufficiently Allege Circumstances Warranting Piercing the
    Corporate Veil ......................................................................................... 14

    C.   Plaintiffs Sufficiently Allege PRA Inc. and Stern Are Liable for Ratifying
    PRA LLC's Conduct ................................................................................ 16

IV.  Plaintiffs' TCPA Claim is an Appropriate Basis for an Attorneys' Fee Award
Under California Code of Civil Procedure Section 1021.5 ............................. 18

    A.   Section 1021.5 Provides a Supplemental Remedy for Plaintiffs' Claims ........... 19

        1.   Congress Did Not Preempt California from Providing an
        Additional Remedy to the TCPA ............................................... 20

        2.   Defendants' Argument that Section 1021.5 "Does Not Create an
        Independent Basis for Relief" Is Irrelevant .............................. 21

    B.   Plaintiffs' Prosecution of this Action Merits an Attorneys' Fees Award
    Under Section 1021.5 ................................................................................ 22

IV.  Conclusion ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*al-Kidd v. Ashcroft*
   580 F.3d 949 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2074 (2011)..................4, 12

*Alvarez v. Chevron Corp.*
   656 F.3d 925 (9th Cir. 2011) ...........................................................................................12

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).........................................................................................................4

*Attrezzi, LLC v. Maytag Corp.*
   436 F.3d 32 (1st Cir. 2006)............................................................................................21

*Bauman v. DaimlerChrysler Corp.*
   644 F.3d 909 (9th Cir. 2011) ......................................................................................7, 11

*Bd. of Trs. of Mill Cabinet Pension Trust Fund for Nor. Cal. v. Valley Cabinet & Mfg.
Co.*
   877 F.2d 769 (9th Cir. 1989) .........................................................................................16

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007).................................................................................................4, 5, 10

*Bellomo v. Penn. Life Co.*
   488 F. Supp. 744 (S.D.N.Y.1980) .................................................................................14

*Bowoto v. Chevron Texaco Corp.*
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) ...................................................................9, 15, 17

*Chavez v. United States*
   683 F.3d 1102 (9th Cir. 2012) ........................................................................................4

*Chubb Custom Insurance Co. v. Space Systems/Loral, Inc.*
   No. 09-4485, 2010 WL 689940 (N.D. Cal. Feb. 23, 2010) ...........................................21, 22

*Cinezeta Internationale Filmproduktionsgesellschaft mbH & Co 1. Beteiligungs KG v.
Inferno Distribution, LLC*
   No. 10-9938, 2012 WL 255539 (C.D. Cal. Jan. 26, 2012) .............................................16

*City of Vernon v. Southern California Edison Co.*
   955 F.2d 1361 (9th Cir. 1992) .........................................................................................7

*Columbia Pictures Indus., Inc. v. Fung*
   No. 06-5578 , 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)........................................7, 8

*Doe v. Unocal Corp.*
    248 F.3d 915 (9th Cir. 2001) ....................................................................................13, 15

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*
    No. 03-5412, 2008 WL 2220396 (E.D. Cal. May 27, 2008) ...................................8, 9, 10, 12

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*
    No. 04-2562, 2005 WL 5517732 (S.D. Cal. May 31, 2005) ............................................24

*English v. General Elec. Co.*
    496 U.S. 72 (1990)...............................................................................................................21

*Hickey v. Voxernet LLC*
    No. 12-373, 2012 WL 3682978 (W.D. Wash. Aug. 13, 2012)....................................5, 10

*In re Easysaver Rewards Litig.*
    737 F. Supp. 2d 1159 (S.D. Cal. 2010).............................................................................14

*In re Fresh and Process Potatoes Antitrust Litig.*
    834 F. Supp.2d 1141 (D. Idaho 2011) ...............................................................................7

*In re Gonda*
    No. 10–58722, 2011 WL 5240154 (Bankr. N.D. Cal. Oct. 31, 2011) ...................................18

*In re Hydroxycut Mktg. and Sales Practices Litig.*
    810 F. Supp. 2d 1100 (S.D. Cal. 2011)..............................................................................14

*In re Jiffy Lube Int'l Inc., Text Spam Litig.*
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ....................................................................... passim

*In re Wolverton Assocs.*
    909 F.2d 1286 (9th Cir. 1990) ....................................................................................17, 18

*Interworld Network Int'l, Inc. v. VWR Int'l, Inc.*
    No. 11-4843, 2012 WL 78738 (N.D. Cal. Jan. 10, 2012).......................................................13

*j2 Global Commc'ns, Inc. v. Blue Jay Inc.*
    No. 08-4254, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009)................................................5, 13

*Johnson v. Riverside Healthcare System, LP*
    534 F.3d 1116 (9th Cir. 2008) ............................................................................................5

*Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker
    Real Estate Corp.*
    281 F.R.D. 422 (C.D. Cal. 2012) ......................................................................................18

*Keams v. Tempe Technical Inst., Inc.*
    993 F. Supp. 714 (D. Ariz. 1997) ......................................................................................18

*Kokopelli Community Workshop Corp. v. Select Portfolio Servicing, Inc.*
   No. 10-1605 , 2011 WL 3490136 (S.D. Cal. Aug. 10, 2011) ............................................9, 10

*Kramer v. Autobytel, Inc.*
   759 F. Supp. 2d 1165 (N.D. Cal. 2010) ...............................................................................6

*La Jolla Friends of the Seals v. City of San Diego*
   No. 08-1847, 2011 WL 3794920 (S.D. Cal. Aug. 26, 2011) ...............................................20

*Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*
   736 F.2d 516 (9th Cir. 1984) ..............................................................................................16

*Leipart v. Guardian Indus., Inc.*
   234 F.3d 1063 (9th Cir. 2000) ............................................................................................20

*Madrigal v. Tommy Bahama Group, Inc.*
   No. 09-08924, 2010 WL 4384235 (C.D. Cal. Oct. 18, 2010).............................................22

*Manantan v. National City Mortg.*
   No. 11- 00216, 2011 WL 3267706 (N.D. Cal. July 28, 2011) ...........................................24

*Medtronic, Inc. v. Lohr*
   518 U.S. 470 (1996).............................................................................................................20

*Meyer v. Holley*
   537 U.S. 280 (2003)...............................................................................................................6

*Meyer v. Portfolio Recovery Assocs., LLC*
   696 F.3d 943 (2012), *amended and reh'g denied by* – F.3d –, No. 11-56600, 2012
   WL 6720599 (Dec. 28, 2012) ...................................................................................23, 24, 25

*Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*
   969 F.2d 764 (9th Cir. 1992) ..............................................................................................15

*Moss v. United States Secret Service*
   572 F.3d 962 (9th Cir. 2009) ..............................................................................................12

*Nationwide Transport Finance v. Cass Info. Sys., Inc.*
   523 F.3d 1051 (9th Cir. 2008) ............................................................................................13

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*
   854 F.2d 1538 (9th Cir. 1988) ............................................................................................15

*Palomares v. Bear Stearns Residential Mortg. Corp.*
   No. 07-01899, 2008 WL 686683 (S.D. Cal. Mar. 13, 2008) ..............................................10

*Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*
   767 F.2d 1379 (9th Cir. 1985) ..........................................................................................7, 6

*Rodriguez v. JP Morgan Chase & Co.*
   809 F. Supp. 2d 1291 (S.D. Cal. 2011)........................................................9, 10, 11

*Seymour v. Hull & Moreland Eng'g*
   605 F.2d 1105 (9th Cir. 1979) ...............................................................................16

*Seymour v. Summa Vista Cinema, Inc.*
   809 F.2d 1385 (9th Cir. 1987) ...............................................................................18

*Skaff v. Meridien N. Am. Beverly Hills, LLC*
   506 F.3d 832 (9th Cir. 2007) ...............................................................................5, 10

*Slottow v. Am. Cas. Co. of Reading, Pa.*
   10 F.3d 1355 (9th Cir. 1993) ..................................................................................15

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ..................................................................................4

*Stickrath v. Globalstar, Inc.*
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................................................14

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*
   622 F. Supp. 2d 890 (N.D. Cal. 2009) ........................................................7, 10, 12

*Telesaurus VPC, LLC v. Power*
   623 F.3d 998 (9th Cir. 2010) ..................................................................................12

*Texas v. Am. BlastFax, Inc.*
   164 F. Supp. 2d 892 (W.D. Tex. 2000).....................................................................5

*Thomas v. Taco Bell Corp.*
   No. 09-01097, 2012 WL 3047351 (C.D. Cal. June 25, 2012) .................................6

*UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting
   Indus. of U.S. and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*
   48 F.3d 1465 (9th Cir. 1994) ..................................................................................16

*United States ex rel. Rosales v. San Francisco Housing Authority*
   173 F. Supp. 2d 987 (N.D. Cal. 2001) ....................................................................6

*United States v. Bestfoods*
   524 U.S. 51 (1998)..............................................................................................7, 14

*United States v. Bonds*
   608 F.3d 495 (9th Cir. 2010) ....................................................................................7

*United States v. Real Property Located at 41741 Nat. Trails Way, Daggett, Cal.*
   989 F.2d 1089 (9th Cir. 1993) ................................................................................21

*United States v. Standard Beauty Supply Stores, Inc.*
  561 F.2d 774 (9th Cir. 1977) ...................................................16

*Vera v. O'Keefe*
  791 F. Supp. 2d 959 (S.D. Cal. 2011) (California Invasion of Privacy Act)............6

*VP Racing Fuels, Inc. v. General Petroleum Corp.*
  673 F. Supp. 2d 1073 (E.D. Cal. 2009)............................................20

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*
  556 F.2d 406 (9th Cir. 1977) ................................................6, 11

*Willner v. Manpower Inc.*
  No. 11-02846, 2012 WL 1570789 (N.D. Cal. 2012) ...........................22

*Wyeth v. Levine*
  555 U.S. 555 (2009)............................................................20

**CALIFORNIA CASES**

*Alvarez v. Felker Manufacturing Co.*
  230 Cal.App.2d 987 (1964) ...................................................10

*Beasley v. Wells Fargo Bank*
  235 Cal.App.3d 1407 (1991) .........................................23, 24, 25

*Borders Online, LLC v. State Bd. of Equalization*
  129 Cal.App.4th 1179 (2005) .................................................10

*Citizens Against Rent Control v. City of Berkeley*
  181 Cal.App.3d 213 (1986) ...................................................19

*Colgan v. Leatherman Tool Group, Inc.*
  135 Cal.App.4th 663 (2006) ..................................................23

*Estrada v. FedEx Ground Package Sys., Inc.*
  154 Cal.App.4th 1 (2007) .................................................23, 24

*Folsom v. Butte County Ass'n of Governments*
  32 Cal.3d 668 (1982) ........................................................22

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*
  148 Cal.App.4th 937 (2007) ..................................................10

*Graham v. DaimlerChrysler Corp.*
  34 Cal.4th 553 (2004) ....................................................23, 24

*Hosp. Sys., Inc. v. Office of Statewide Health*
  25 Cal.App.4th 1686 (1994) ..................................................21

*In re Conservatorship of Whitley*
    50 Cal.4th 1206 (2010) ................................................................24

*Jutkowitz v. Bourns, Inc.*
    118 Cal.App.3d 102 (1981) ...........................................................24

*Lyons v. Chinese Hosp. Ass'n*
    136 Cal.App.4th 1331 (2006) ........................................................25

*Maria P. v. Riles*
    43 Cal.3d 1281 (1987) ..................................................................19

*Notrica v. State Compensation Ins. Fund*
    70 Cal.App.4th 911 (1999) ...........................................................23

*Press v. Lucky Stores, Inc.*
    34 Cal.3d 311 (1983) ....................................................................25

*Schmid v. Lovette*
    154 Cal.App.3d 466 (1984) ...........................................................20

*Serrano v. Stefan Merli Plastering Co., Inc.*
    52 Cal.4th 1018 (2011) .............................................................23, 24

*Slayton v. Pomona Unified School Dist.*
    161 Cal.App.3d 538 (1984) ...........................................................19

*Washburn v. City of Berkeley*
    195 Cal.App.3d 578 (1987) ...........................................................22

*Woodland Hills Residents Ass'n, Inc. v. City Council*
    23 Cal.3d 917 (1979) ....................................................................23

**FEDERAL STATUTES**

15 U.S.C. 1692k(a)(2)(B) ...................................................................16

47 U.S.C. § 227 (Telephone Consumer Protection Act) ........................ passim

47 U.S.C. § 227(b)(3) .........................................................................25

47 U.S.C. § 227(f)(1) ..........................................................................20

**CALIFORNIA STATUTES**

California Code of Civil Procedure § 1021.5 ..................................... passim

**OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1218 (3d ed. 2012) ...................................................................................................................................11

Fed. R. Civ. P. 8 .......................................................................................................................5

Fed. R. Civ. P. 8(a)(2)...............................................................................................................5

Fed. R. Civ. P. 12(b)(6).............................................................................................................4

Restatement (Second) of Agency, § 82...................................................................................18

Restatement (Third) of Agency, § 1.01 ........................................................................7, 8, 12

Restatement (Third) of Agency, § 2.01 ....................................................................................7

Restatement (Third) of Agency, § 2.03 ....................................................................................7

Restatement (Third) of Agency, § 3.01 ....................................................................................7

Restatement (Third) of Agency, § 4.01 ..............................................................................17, 18

Restatement (Third) of Agency, § 4.01(2)..............................................................................17

Restatement (Third) Of Agency, § 7.01 .................................................................................13

U.S. Const., First Amendment ................................................................................................19

Plaintiffs Jeremy Frydman, John Howard, Sam Marin, Jesse Meyer, Fred Jury, and Danny Allen (collectively, "Plaintiffs") hereby submit their Opposition to the Defendants Portfolio Recovery Associates, LLC ("PRA LLC"), Portfolio Recovery Associates, Inc. ("PRA Inc."), and Neal Stern's Motion to Dismiss ("Motion") Plaintiffs' First Amended Consolidated Complaint ("FACC").

## I.        Procedural Background

Plaintiffs filed their motion to amend the original consolidated complaint on October 9, 2012. (Dkt. #61.) Plaintiffs also filed their opposition to the pending motion to dismiss the original consolidated complaint on November 9. On November 12, Defendants alerted the Court and Plaintiffs they did not intend to oppose the motion to amend. (Dkt. #65.) The Court ordered the Clerk of the Court to file the proposed FACC on November 14. (*Cf.* Dkt. #66, 67.) On November 28, Defendants moved to dismiss the FACC. (Dkt. #71.)

The FACC alleges that all of the Defendants are liable for violations of the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"). (Dkt. #67.) Defendants do not dispute that the FACC alleges a TCPA claim against PRA LLC. Section II of the Motion claims that the FACC does not adequately allege that PRA Inc. or Stern are liable under the TCPA, either for direct violations or on a vicarious theory of liability. Section III of the Motion contends that an attorneys' fee award under California Code of Civil Procedure section 1021.5 is not available as an additional remedy for violations of the TCPA. All of these arguments lack merit.

## II.       The FACC Alleges Specific Details about PRA Inc., Stern, and PRA LLC's Relationship

The FACC significantly elaborates and expands on the original complaint's allegations of PRA Inc.'s involvement in the management and operation of PRA LLC's call centers. The FACC also expressly alleges theories of piercing the corporate veil and ratification.

### A.        Plaintiffs Alleges PRA Inc. and Stern's Direct Involvement in PRA LLC's TCPA Violations

The FACC alleges that income from PRA LLC "accounts for the overwhelming majority (approximately 88%) of PRA Inc.'s revenue" and that "[a]ccordingly, PRA Inc. directly manages PRA LLC's daily operations - and does not treat PRA LLC as a passive investment." (FACC

¶62.) The FACC alleges that "PRA Inc. is directly involved in" PRA LLC's TCPA violations, and that "PRA Inc.'s employees and agents had direct, personal participation in [PRA LLC's] TCPA violations alleged above." (*Id*.) The FACC also recites relevant parts of the Defendants' securities filing that flesh out PRA Inc.'s role in the operation of PRA LLC's call centers:

> We have devoted significant effort to developing our systems, including statistical models, databases and reporting packages, to optimize our portfolio purchases and collection efforts. . . . We employ a staff of Quality Control and Compliance employees whose role it is to monitor calls and observe collection system entries. We monitor and research daily exception reports that track significant account status movements and account changes. To enhance this process, we employ sophisticated call and work action recording systems which allow us to better monitor compliance and quality of our customer contacts. . . . We have developed financial models and systems for pricing portfolio acquisitions, managing the collections process and monitoring operating results. We perform a static pool analysis monthly on each of our portfolios, inputting actual results back into our acquisition models, to enhance their accuracy. We monitor collection results continuously, seeking to identify and resolve negative trends immediately. . . . This combination of hardware, software and proprietary modeling and systems has been developed by our management team through years of experience in this industry and we believe provides us with an important competitive advantage from the acquisition process all the way through collection operations.

(*Id*. ¶62.) Moreover, the FACC goes on to specifically identify and describe the role of the PRA Inc. personnel involved in operating PRA LLC:

> Neal Stern, PRA Inc.'s Chief Operating Officer, and (on information and belief) other PRA Inc. employees, actively exercise day-to-day control over the debt collection operations in PRA LLC's call centers and the operation, maintainance and control of Avaya computerized dialers (and any other automated dialers owned by PRA LLC) which Defendants use to violate the TCPA.

(*Id*. ¶63.) The FACC again recites parts of Defendants' own securities filings which confirm that it is a PRA Inc. officer and employee (Stern) that manages PRA LLC's call centers:

> Mr. Stern . . . is responsible for all owned portfolios collection activity, including call centers, legal outsourcing, collection agency outsourcing, probate, customer service, and portfolio collection strategy and analytics. He has extensive experience running multiple call centers of substantial scale.

(*Id*. ¶65.) Stern has also averred in related litigation that he "*regularly review*[s] *account notes and records of communications PRA [LLC] has with debtors such as Plaintiff Jesse Meyer*," and on that basis the FACC alleges that PRA Inc. "is directly involved in managing PRA LLC's debt collection activities." (*Id*. ¶64 (emphasis in original).) The FACC alleges specific details about the scope of Stern's control over PRA LLC, including "the day-to-day management and

operation of the dialers, staffing at PRA LLC's call centers, and reassigning employment

responsibilities between different PRA LLC employees." (*Id.* ¶63.) The FACC makes detailed

allegations about *how* Stern exercises control over PRA LLC's call centers: "Stern attends

weekly status meetings regarding the operation of PRA LLC's call centers and specifically PRA

LLC's dialers with PRA LLC employees." (*Id.*) The FACC's most important allegation is that

"PRA Inc.'s compensation to Mr. Stern has been based, in part, on his development and

implementation of strategies that increased the number of dollars recovered from consumers . . .

." (*Id.*) ***This shows that PRA Inc. specifically intended for Stern to manage and control the***

***operation of PRA LLC's call centers because it specifically rewarded him (with extra pay) for***

***doing so.***

### B.     Plaintiffs' Facts Supporting a Corporate Veil-Piercing Theory

The FACC also explicitly alleges that the circumstances of this case "support piercing

PRA LLC's corporate veil." (*Id.* ¶67.) The FACC asserts that "PRA LLC is woefully

undercapitalized in relation to the significant liability associated with Plaintiffs' claims for

statutory damages." (*Id.*) The FACC points out that PRA LLC's liability to just class members in

California "is in excess of $300 million," that "PRA LLC's net worth is far below $300 million,

and that PRA Inc. takes sufficient distributions from PRA LLC so that PRA Inc.'s net worth

exceeds PRA LLC's net worth." (*Id.*) Finally, the FACC alleges that "PRA Inc. purposefully

keeps PRA LLC undercapitalized to reduce its net worth and thereby limit" damages in claims

against PRA LLC which hinge on PRA LLC's net worth. (*Id.*)

### C.     Plaintiffs Allege PRA Inc. and Stern Ratified PRA LLC's TCPA Violations

Lastly, the FACC alleges that Stern and PRA Inc. are liable because they ratified PRA

LLC's TCPA violations.

> In its Form 10-K securities filings for at least years 2009, 2010, and 2011, PRA
> Inc. stated that PRA LLC "use[d] automated predictive dialers to place calls to
> consumers" in the course of "collecting accounts," and acknowledged that the
> TCPA "place[d] certain restrictions on telemarketers and users of automated
> dialing equipment who place telephone calls to consumers." Despite publicly
> acknowledging the fact that PRA LLC's collection methods implicated the TCPA
> in its securities filings, neither PRA Inc. nor Neal Stern made any effort to change
> those efforts.

(*Id.* ¶68.) The FACC alleges that Stern and PRA Inc. thereby ratified PRA LLC's conduct and are therefore liable for the same. (*Id.* ¶68.)

## III.    The FACC Sufficiently Alleges That PRA Inc. and Stern Are Liable Under the TCPA

The FACC alleges sufficient facts to prevail over the Motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) define when a complaint will prevail over a motion to dismiss. Claims must be plausible to survive a motion to dismiss: the test for plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [liability.]" *Twombly*, 550 U.S. at 556. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "'Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (punctuation omitted).

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original). On a motion to dismiss, all reasonable inferences must be drawn in favor of the plaintiff; an inference may be drawn in favor of plaintiff even if it is "not a *necessary* inference," so long as it is not "an *unreasonable* inference." *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 n.27 (9th Cir. 2009) (emphasis in original), *rev'd on other grounds*, 131 S. Ct. 2074 (2011). Here, the evidentiary bases for the FACC's factual allegations are both Defendants' own securities filings and Defendants' discovery responses. (*See* Dkt. #59 at 2:21-26.) Given these sources, the FACC's claims are more than just plausible.

The Motion relies heavily on the notion that Plaintiffs have not alleged their claims in sufficient detail. Plaintiffs' Complaint only needs to allege a "short and plain statement of [their]

claim." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). The purpose of the pleading requirements under Rule 8 is to "give the defendant fair notice of the factual basis of the claim[.]" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007). "This is not an onerous burden. Specific facts are not necessary; the statement need only give the defendants fair notice of what the claim is and the grounds upon which it rests." *Johnson*, 534 F.3d at 1122 (citation, punctuation omitted). Simple, straightforward allegations, such as "the model form for pleading negligence, Form 9," are sufficient to prevail over a motion to dismiss. *Cf. Twombly*, 550 U.S. at 565 n. 10. Plaintiffs have done that work here: the FACC alleges more than enough for every Defendant to have fair notice on which facts Plaintiffs' claims rest.

## A. Plaintiffs Sufficiently Allege Stern and PRA Inc. Are Directly and Vicariously Liable

**Stern Is Directly Liable Under the TCPA:** The FACC sufficiently alleges Stern's direct involvement in PRA LLC's TCPA violations. Defendants argue that, because the FACC does not allege Stern himself "made or placed any calls to Plaintiffs or the putative class members," it does not allege that Stern violated the TCPA. (*Cf.* Def.'s Mem. 7.) This argument is nonsensical: the calls at issue were made by machines (e.g., Automatic Telephone Dialing Systems), rather than any particular person. This is the essence of a TCPA claim, after all. Stern is liable under the TCPA because he exercised day-to-day control over the operation of PRA LLC's automated dialers. An individual "may be held personally liable for purposes of the TCPA if he or she had 'direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved.'" *j2 Global Commc'ns, Inc. v. Blue Jay Inc.*, No. 08-4254, 2009 WL 4572726, *6 (N.D. Cal. Dec. 1, 2009) (quoting *Texas v. Am. BlastFax, Inc.*, 164 F. Supp. 2d 892, 896-99 (W.D. Tex. 2000)). Stern "'can be held liable even if [he] *did not physically send the messages at issue*' as long as [he] *ultimately controlled* sending the message." *Hickey v. Voxernet LLC*, No. 12-373, 2012 WL 3682978, *2 (W.D. Wash. Aug. 13, 2012) (quoting *In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1257 (S.D. Cal. 2012)) (emphasis added). Indeed, this Court has held (in a similar context) that "[t]o record

1   a confidential communication can mean, in the ordinary sense of the term, to cause a confidential

2   communication to be recorded." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (S.D. Cal. 2011)

3   (California Invasion of Privacy Act). The FACC alleges that Stern "direct[ed], supervis[ed], and

4   command[ed] the manner and means of PRA LLC's calls from the Avaya dialers." (FACC ¶63.)

5   This is sufficient.

6        To the extent Defendants argue that Plaintiffs must allege that PRA Inc. *itself* dialed

7   Plaintiffs' telephone numbers, Defendants' argument reflects a flawed misunderstanding of the

8   TCPA and corporate liability. Again, the essence of a TCPA claim is that an automated dialer,

9   rather than a person, placed the telephone call. Also, PRA Inc. is a legal person; it has no

10  physical body to accomplish such actions. "Corporations, of course, can only act through

11  agents[.]" *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 419 (9th Cir. 1977).[1]

12  **Defendants Are Vicariously Liable for PRA LLC's TCPA Violations:** The FACC

13  also sufficiently alleges Stern and PRA Inc.'s vicarious liability for PRA LLC's TCPA

14  violations. TCPA cases have uniformly recognized vicarious liability under the TCPA. The

15  TCPA incorporates "the traditional standards of vicarious liability . . . including the alter ego and

16  agency doctrines." *Thomas v. Taco Bell Corp.*, No. 09-01097, 2012 WL 3047351, *4 (C.D. Cal.

17  June 25, 2012) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (when Congress creates a tort

18  action, "it legislates against a legal background of ordinary tort-related vicarious liability rules

19  and consequently intends its legislation to incorporate those rules")). A defendant is vicariously

20  liable under the TCPA if it "directed or supervised the manner and means" of conduct that

21  violated the TCPA, "created or developed" a communication that violated the TCPA, or "played

22  [a] role in the decision" to communicate in a manner that violated the TCPA. *Id*. Likewise, any

23  defendant who is "responsible" for calls which violate the TCPA is liable, "regardless of which

24  entity physically sends the messages." *In re Jiffy Lube*, 847 F. Supp. 2d at 1256. *Cf. id*. at 1257

25  (quoting *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1170 (N.D. Cal. 2010) ("advertisers

26

27  _____
    [1]   "Corporate entities . . . can only act through their agents." *United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F. Supp. 2d 987, 1003 (N.D. Cal. 2001) (citing

28  *Protectus Alpha*, 767 F.2d at 1386 ("a corporation can act only through its agents and employees")).

and advertisement broadcasters [are] subject to liability under the TCPA")).

Likewise, PRA Inc. is vicariously liable because its executive (Stern) was acting within the scope of his employment duties with PRA Inc. when he violated the TCPA. There is no doubt that the operation of PRA LLC's call centers was within the scope of Stern's employment because PRA Inc. specifically hired Stern because of his expertise in managing call centers and specifically paid him to increase the call centers' efficiency. (*See* FACC ¶¶63-65.) "As long as [an] employee is acting within the scope of his employment, imposition of liability upon the corporation is appropriate." *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1369 (9th Cir. 1992) (citations omitted). "[N]o reasonable distinction can be made between the guilt of the employee in a managerial capacity acting within the scope of his employment and the guilt of the corporation." *Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985). When a parent company's employees directly operate "a corporate subsidiary's facility," "the existence of the parent-subsidiary relationship under state corporate law is simply irrelevant to the issue of direct liability." *United States v. Bestfoods*, 524 U.S. 51, 65, 72-73 (1998) (parent corporation could be liable under CERCLA where its employee was "actively participated in and exerted control" over subsidiary's plant).

**The FACC Alleges PRA LLC Acted as Stern and PRA Inc.'s Agent:** Lastly, the FACC amply alleges that PRA LLC acted as Stern and PRA Inc.'s agent when it violated the TCPA. Federal courts adjudicating agency issues arising under federal law (such as the TCPA) apply the latest Restatement of Agency.[2] This test for agency hinges on three factors:

> (1) manifestation by a principal that the agent would act on its behalf; (2) the agent's acceptance or consent to act on the principal's behalf; and (3) the understanding that the principal would be in control of the agent's undertaking on its behalf.

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009)

---

[2]   *See also*, *e.g.*, *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 922-23 (9th Cir. 2011) (quoting Restatement (Third) of Agency, § 1.01 cmt. c; *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (quoting Restatement (Third) of Agency, § 1.01)); *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp.2d 1141, 1167-68 (D. Idaho 2011) (citing Restatement (Third) of Agency, §§ 2.01, 2.03); *Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578 , 2009 WL 6355911, *13 (C.D. Cal. Dec. 21, 2009) (quoting Restatement (Third) of Agency, § 3.01).

(quoting Restatement (Third) of Agency § 1.01 (2006), applying same to evidence that subsidiary acted as parent's agent). *See also E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. 03-5412, 2008 WL 2220396, *5-6 (E.D. Cal. May 27, 2008) (same). The central touchstone of this "traditional common law agency test" is the parent's "control over the subsidiary": "day to day control" is the "touchstone . . . [recognized] by various courts to determine agency." *Id.*

The FACC readily satisfies the foregoing Restatement test. First, "PRA LLC accounts for the overwhelming majority (approximately 88%) of PRA Inc.'s revenue." (FACC ¶62.) According to Defendants' securities filings, Stern's employment responsibilities included the management of PRA LLC's call centers. (FACC ¶65.)  Further, PRA Inc. specifically paid Stern for increasing the revenue from those call centers. (*Id*. ¶63.) This is sufficient to allege that PRA Inc.'s manifested its assent that PRA LLC's call centers would make calls to obtain revenue for PRA Inc. "[E]ngaging an agent to accomplish an objective that . . . requires that particular actions be taken would manifest assent to those actions." Restatement (Third) of Agency, § 1.03. cmt. c. *See also E. & J. Gallo Winery*, 2008 WL 2220396, at *8 ("no real dispute" that the parent company manifested assent to subsidiary representing parent in United States, when in fact all of the gas "that was produced by [the parent] was sold in the United States by [the subsidiary]").

Likewise, as manager of PRA LLC's call centers, Stern made decisions about "the day-to-day management and operation of the dialers, staffing at PRA LLC's call centers, and reassigning employment responsibilities between different PRA LLC employees," and PRA LLC implemented those decisions. (*Id*.) The fact that PRA LLC implemented Stern's decisions evidences both PRA LLC's agency relationship and Stern's control (and therefore PRA Inc.'s control) over PRA LLC's operations.

> **If the principal requests another to act on the principal's behalf, indicating that the action should be taken without further communication and the other consents so to act, an agency relationship exists.** If the putative agent does the requested act, it is appropriate to infer that the action was taken as agent for the person who requested the action . . .

Restatement (Third) of Agency, § 1.01 cmt. c. (emphasis added). *See also Columbia Pictures Indus., Inc. v. Fung*, No. 06-5578, 2009 WL 6355911, *13 (C.D. Cal. Dec. 21, 2009) (agency established where online forum designated certain moderators as "admins," and admins were

1   "under the control of Defendants and assigned duties related to the administration of the web

2   forums"); *E. & J. Gallo Winery*, 2008 WL 2220396, at *8 (subsidiary's assent to carrying out the

3   parent's intent was "evidenced by the fact[] that [it] did, in fact, sell all of the gas that was

4   produced by [the parent] that was sold in the United States").

5           Similarly, the facts alleged in the FACC compare favorably with *Bowoto v. Chevron*

6   *Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004). PRA Inc. "monitor[s] and research[es]

7   daily exception reports that track significant account status movements and account changes,"

8   and "monitor[s] collection results continuously," while Stern "attends weekly status meetings

9   regarding [e.g.] PRA LLC's dialers" and "regularly review[s] account notes and records of

10  communications PRA [LLC] has with debtors." (FACC ¶¶62-64.) In *Bowoto*, the "close

11  relationship between the parents and the subsidiary" with "regular communications regarding"

12  the agent's conduct was found to be sufficient evidence of agency. *Bowoto*, 312 F. Supp. 2d at

13  1243. *Bowoto* found sufficient evidence of an agency relationship where the parent "monitor[ed]

14  daily business operations to ensure consistent compliance with [its] policies, procedures and

15  standards," including "daily drilling reports which . . . reflected shutdowns in drilling and

16  production due to 'community problems.'" *Id.* at 1244, 1245. The FACC amply alleges an

17  agency relationship between PRA LLC and Stern/PRA Inc.

### 1.    Defendants Advocate Inapposite Agency Tests

19          Despite the FACC's detailed factual allegations relating to agency, Defendants argue that

20  Plaintiffs "have failed to allege any of the requisite 'agency' elements, let alone any factual

21  allegations supporting such elements." (Def.'s Mem. 14.) Defendants derive the foregoing

22  "agency elements" from *Kokopelli Community Workshop Corp. v. Select Portfolio Servicing,*

23  *Inc.*, No. 10-1605 , 2011 WL 3490136 (S.D. Cal. Aug. 10, 2011) and *Rodriguez v. JP Morgan*

24  *Chase & Co.*, 809 F. Supp. 2d 1291 (S.D. Cal. 2011). It is clear that these cases are not

25  applicable here.

26          The agency tests applied in *Kokopelli* and *Rodriguez* derive from California case law.

27  Plaintiffs' TCPA claim arises under federal law. Defendants do not give any reason why

28  *Kokopelli* or *Rodriguez* should supplant the Restatement test for agency that applies in federal

law. *See, e.g., Sun Microsystems*, 622 F. Supp. 2d at 898-99 (Restatement controls federal common law agency in parent-subsidiary context); *E. & J. Gallo Winery*, 2008 WL 2220396, at *5-8 (same). *Sun Microsystems* and *E. & J. Gallo Winery* are more thoroughly considered decisions: their analysis on agency is far more extensive, and *Sun Microsystems* expressly chose the Restatement test among different, competing agency tests. By comparison, the agency analyses in *Kokopelli* and *Rodriguez* are perfunctory. Defendants also ignore the fact that no TCPA case has ever applied the agency tests in *Kokopelli* and *Rodriguez*. Finally, Defendants do not present any reason why Plaintiffs should have to allege more than was alleged in *Hickey* or *In re Jiffy Lube*, 847 F. Supp. 2d at 1258 (refusing to dismiss complaint, even though it did "not provide specifics about how much control [Defendants] possessed or how much information [they] had"). The Ninth Circuit has expressly rejected arguments that plaintiffs must allege their claims in "specific detail" and "support such pleadings with evidence," recognizing that such arguments "would essentially impose a heightened pleading standard" on plaintiffs. *Skaff*, 506 F.3d at 841. Even after *Twombly*, courts are "*not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule*." *Id.* (emphasis added). Here, Plaintiffs have gone far beyond the notice pleading standard by adducing PRA's own documents which indicate that Stern exercises day-to-day control over PRA LLC's call centers.

There are other reasons to be skeptical about Defendants' proposed agency tests. The test cited in *Kokopelli* is not the dispositive test for agency even in California state courts.[3] Likewise, the Ninth Circuit has held that the test cited in *Rodriguez* applies to an alter ego theory, rather

---

[3] The agency test in *Kokopelli* derives from *Alvarez v. Felker Manufacturing Co.*, 230 Cal.App.2d 987 (1964). *See Kokopelli*, 2011 WL 3490136, at *3 (citing *Palomares v. Bear Stearns Residential Mortg. Corp.*, No. 07-01899, 2008 WL 686683, *4 (S.D. Cal. Mar. 13, 2008) (citing *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 964 (2007) (citing *Alvarez v. Felker Mfg. Co.*, 230 Cal.App.2d at 999))). Other California courts have noted that the test in *Alvarez* is not the sine qua non of agency in California. "While it is true courts consider [the factors cited by *Alvarez*] when considering agency issues in various contexts, there is no bright-line [test] in determining agency." *Borders Online, LLC v. State Bd. of Equalization*, 129 Cal.App.4th 1179, 1190 (2005). *Borders* distinguished cases applying the *Alvarez* test because they "were decided in other contexts, analyzed far different factual situations, and did not necessarily apply" every element of the *Alvarez* test. *Id.*

than an agency theory.[4] To the extent Defendants imply that there is a higher standard for alleging agency in the context of a corporate subsidiary, this is wrong. Parent corporations are liable for their agents' actions, whether or not the agents are also subsidiaries. "[I]t is clear that whether the alleged general agent was a subsidiary of the principal or independently owned is irrelevant," although proving "the requisite 'agency' control may be even easier when a parent-subsidiary relationship is involved." *Wells Fargo*, 556 F.2d at 420, 423. Defendants ignore the FACC's allegations that Stern, the Chief Operating Officer of PRA, Inc., is responsible for the collection activities PRA LLC's call centers.

### 2. Defendants Do Not Distinguish *In re Jiffy Lube*

Defendants try to distinguish *In re Jiffy Lube* on the basis that the FACC did not "allege that PRA Inc. 'hired,' 'contracted with,' or otherwise 'engaged' PRA LLC." (*Cf.* Def.'s Mem. 7.) Defendants' purported distinction is unavailing. Contrary to Defendants' implication, Plaintiffs plainly do not have to use the exact same language in *In re Jiffy Lube* to allege vicarious liability under the TCPA. Forcing Plaintiffs to amend their complaint to use specific words drawn from *In re Jiffy Lube* is simply a waste of their time and the Court's time.

> It always should be borne in mind that the federal rules reflect the judgment of the drafters that polishing the pleadings by means of motion practice rarely is worth the effort and has nothing to do with ascertaining the merits of the action.

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1218 (3d ed. 2012). Indeed, *In re Jiffy Lube* evidences how simple, direct allegations of involvement and agency are sufficient to state a TCPA claim based on vicarious liability:

> Plaintiffs have provided sufficient detail and plausible factual allegations regarding Heartland's ultimate control to meet the federal pleading standard. Plaintiffs have alleged that "Defendants and their agents directed the mass transmission of wireless spam to the cell phones nationwide."

*In re Jiffy Lube*, 847 F. Supp. 2d at 1258 (complaint survived motion to dismiss, even though it

---

[4]  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) expressly held that the test advanced in *Rodriguez* (that the "parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former") is for *alter ego*, and not agency. *Id.* at 920. *Bauman* held that the control required for agency is "not as much control as is required to satisfy the 'alter ego' test," and distinguished "cases that might be read to require a more stringent showing of control [for agency] do so only when describing both the agency and alter ego tests without differentiating between them." *Id.* at 920 & n.12. The test articulated in *Rodriguez* is not applicable to Plaintiffs' agency theory.

did "not provide specifics about how much control [Defendants] possessed or how much information [they] had"). More broadly, *In re Jiffy Lube* did not purport to exhaustively describe every set of facts which gives rise to an agency relationship. "Agency encompasses a wide and diverse range of relationships and circumstances." Restatement (Third) of Agency, § 1.01 cmt. c. *In re Jiffy Lube* used different language because it dealt with a different factual situation than presented here: the relationship between a parent and subsidiary. Courts that have considered agency in the context of a parent/subsidiary relationship have not required plaintiffs to use the exactly the same language from *In re Jiffy Lube*. *Cf. Sun Microsystems*, 622 F. Supp. 2d at 898-99; *E. & J. Gallo Winery*, 2008 WL 2220396, at *5-8.

### 3. The FACC Makes Factual Allegations, Not Legal Conclusions

Defendants argue that the FACC's allegations that Stern was directly involved, authorized, and participated in PRA LLC's TCPA violations are merely "labels and conclusions" that "only underscore[] Plaintiffs' failure to allege any basis for direct liability against PRA Inc. or Stern." (Def.'s Mem. 7.) Defendants studiously ignore the FACC's detailed allegations that:

1. Defendants' own securities filings state that Stern is "responsible for all owned portfolios collection activity, including call centers";

2. PRA Inc. compensated Stern for developing and implementing strategies that increased the profitability of PRA LLC's call centers;

3. Stern "attends weekly status meetings regarding the operation of PRA LLC's call centers and specifically PRA LLC's dialers,"

4. Stern controls "day-to-day management and operation of the dialers, staffing at PRA LLC's call centers, and reassigning employment responsibilities between different PRA LLC employees."

(*Id.* ¶¶ 63, 65.) The Court must assume all "well-pleaded factual allegations" are true. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 930 (9th Cir. 2011) (quoting *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)). Defendants cannot circumvent this fundamental rule governing how the Court construes Plaintiffs' complaint simply by trying to recharacterize the detailed factual allegations above as legal conclusions. Plaintiffs have asserted "ample facts to render plausible" their allegations that PRA Inc. and Stern are directly and intimately involved in PRA LLC's TCPA violations. *al-Kidd*, 580 F.3d at 963. *Cf. Moss v. United States Secret Service*, 572

F.3d 962, 970-71 (9th Cir. 2009) (allegations that Secret Service agents relocated plaintiff's demonstration but did not disturb pro-president demonstration, and subjected plaintiffs to security screening but did not screen others in close proximity to president were "non-conclusory factual allegations" that supported claim of discriminatory intent). Plaintiffs' allegations are heavily based on Defendants' own securities filings.

### 4. Defendants Do Not Distinguish *j2 Global*

Defendants seek to distinguish *j2 Global* on the basis that Stern is a PRA Inc. employee, not a PRA LLC employee. (*Cf.* Def.'s Mem. 8.) This is a non-sequitor. No one disputes that Stern is PRA Inc.'s employee. (Indeed, that is one reason why PRA Inc. is liable for Stern's conduct.) If Defendants mean to argue that the fact he is PRA Inc.'s employee (rather than PRA LLC's) somehow exempts Stern from liability, this is plainly wrong.

> [T]he general rule [is] that "[a]n agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."

*Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1061 (9th Cir. 2008) (quoting Restatement (Third) Of Agency, § 7.01). "An agent who . . . knowingly assists in the commission of tortious [conduct] by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal." *Interworld Network Int'l, Inc. v. VWR Int'l, Inc.*, No. 11-4843, 2012 WL 78738, *6 (N.D. Cal. Jan. 10, 2012) (agent could be held personally liable for conduct in the scope of principal's agency). Stern manages the call centers's operations. With respect to his personal liability, it is entirely irrelevant who employs him.

### 5. PRA Inc.'s Involvement with PRA LLC Is Not Consistent with "Investor Status"

Defendants assert that PRA Inc. is not liable because the FACC does not allege any facts inconsistent with PRA Inc.'s "'investor status.'" (*Cf.* Def.'s Mem. 8 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). *See also id.* 9-10.) A parent's conduct is consistent with "mere investor status" only when the subsidiary

> is nothing more than an investment mechanism a device for diversifying risk through corporate acquisitions the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level.

*In re Hydroxycut Mktg. and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1117 (S.D. Cal. 2011) (quoting *Bellomo v. Penn. Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y.1980)). Conversely, where a parent corporation's employees are "deeply involved in the details of the [subsidiaries'] business," "vigilantly monitor[] the [subsidiaries'] finances," and exercise authority over "significant aspects of the subsidiaries' operations," the parent is well beyond "mere investor status." *Id.* at 1121. Here, PRA Inc. "monitor[s] and research[es] daily exception reports that track significant account status movements and account changes," and "monitor[s] collection results continuously." (FACC ¶62.) PRA Inc. specifically tasked Stern with "responsib[ility] for [PRA LLC's] call centers," and specifically paid Stern for increasing the revenue from PRA LLC's call centers. (*Id.* ¶¶63, 65.) In turn, Stern "attends weekly status meetings regarding [e.g.] PRA LLC's dialers," and "regularly review[s] account notes and records of communications PRA [LLC] has with debtors." (*Id.* ¶¶63, 64.) This is sufficient to hold PRA Inc. liable. *Cf.* *Bestfoods*, 524 U.S. at 65, 72-73 ("parent-subsidiary relationship under state corporate law is simply irrelevant" to parent's liability, where parent's employee "actively participated in and exerted control" over subsidiary's plant). PRA Inc.'s status as a parent company affords it no protection from liability for its own actions in managing PRA LLC's call centers. *See In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1173 (S.D. Cal. 2010) (allegation that parent and subsidiary "together engaged" in tortious conduct because they "jointly operated and profited from" such conduct was sufficient to allege liability of parent corporation); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1002-03 (N.D. Cal. 2007) (allegations that were "not merely derived from [a] parent-subsidiary relationship," and instead "relate[d] specifically to [the parent corporation's] alleged conduct," were to allege liability of parent corporation).

### B.     Plaintiffs Sufficiently Allege Circumstances Warranting Piercing the Corporate Veil

Defendants argue at length that the FACC has not sufficiently alleged either alter ego liability or facts which warrant piercing the corporate veil. (*Cf.* Def.'s Mem. 10-13.) The FACC

makes no mention of an alter ego theory, so that argument is beside the point. Plaintiffs allege that PRA LLC is woefully undercapitalized in comparison to, e.g., its outsized TCPA liability. (FACC ¶67.) Defendants assert that undercapitalization is not sufficient to allege circumstances warranting piercing the corporate veil. (*Cf.* Def.'s Mem. 12.) Again, Defendants contradict clear, black-letter law. "[*I*]*nadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary*." *Doe*, 248 F.3d at 927 (quoting *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1360 (9th Cir. 1993); emphasis added). "[*U*]*ndercapitalization alone will justify piercing the corporate veil.*" *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988) (cited by *Slottow*, 10 F.3d at 1360; emphasis added).[5]

Defendants also assert that Plaintiffs do not adequately allege undercapitalization because the test is not "whether a corporate entity can pay a potential judgment in a lawsuit, but rather whether it is able to meet debts and obligations that arise in the normal course of business." (Def.'s Mem. 12.) Defendants' first problem is that it is abundantly clear that PRA LLC violates the TCPA in the regular course of its business. Defendants' securities filings indicate that PRA LLC routinely calls customers with "automated predictive dialers," and that the TCPA "place certain restrictions on users of certain automated dialing equipment . . . who place telephone calls to consumers." (FACC ¶68.) Defendants' securities filings also make it clear that TCPA claims are a routine matter:

> We are from time to time subject to routine legal claims and proceedings, most of which are incidental to the ordinary course of our business. . . . [C]ustomers. . . may initiate litigation against us in which they allege that we have violated a state or federal law in the process of collecting on an account.

Form 10-K, Portfolio Recovery Associates, Inc., *available at* http://edgar.sec.gov/Archives/ edgar/data/1185348/000119312512085257/d259924d10k.htm (Feb. 28, 2012).[6] Further, the

---

[5]   *Doe*, *Nilsson* and *Slottow* all concern statements of California law. Nonetheless, "California law on piercing the corporate veil is substantially similar to the rule announced in federal cases." *Bowoto*, 312 F. Supp. 2d at 1236 n.6 (citing *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 769 n. 3 (9th Cir. 1992) ("Under the facts of this case, application of California and federal law dictate the same result")).

[6]   As Defendants' Motion notes, "the Court may consider the referenced, but unattached, Form 10-K in ruling on the instant motion." (Def.'s Mem. 16 n. 5.)

FACC alleges Defendants violated the TCPA more than 613,797 times in California alone during the relevant time period. (FACC ¶67.) Undercapitalization is properly alleged where the liability at issue "could reasonably be expected to arise in the normal course of [Defendants'] business." *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 525 (9th Cir. 1984). The FACC properly alleges that PRA LLC is undercapitalized because paying out TCPA claims is a regular part of its business.

Second, the FACC specifically alleges that PRA LLC's undercapitalization is abusive and in bad faith. Piercing the corporate veil is appropriate where there is undercapitalization together with "some conduct amounting to bad faith makes it inequitable for the equitable owner of a corporation to hide behind its corporate veil." *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) (citation, punctuation omitted). *Cf. Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1113 (9th Cir. 1979) (distinguishing from case where "parent . . . had complete control over the subsidiary, and evidence was produced tending to indicate that both had acted in bad faith" where corporate veil was properly pierced). The FACC alleges that "PRA Inc. purposefully keeps PRA LLC undercapitalized to reduce its net worth and thereby limit class claims for statutory damages under 15 U.S.C. 1692k(a)(2)(B)." (FACC ¶67.) This is a sufficient allegation of bad faith.[7]

### C.   Plaintiffs Sufficiently Allege PRA Inc. and Stern Are Liable for Ratifying PRA LLC's Conduct

Further, Plaintiffs allege that PRA Inc. and Stern are liable for ratifying PRA LLC's conduct:

> By disclosing to PRA Inc.'s shareholders that PRA LLC's use of predictive dialers was at risk of violating the TCPA over many years through its Form 10-K

---

[7] *Cf. UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Indus. of U.S. and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1476 (9th Cir. 1994) (evidence that defendants "misused the corporate form to drain corporate assets" could sustain piercing corporate veil); *Bd. of Trs. of Mill Cabinet Pension Trust Fund for Nor. Cal. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir. 1989) (evidence of "fraudulent misuse of the corporate form after incorporation" can merit piercing corporate veil); *Cinezeta Internationale Filmproduktionsgesellschaft mbH & Co 1. Beteiligungs KG v. Inferno Distribution, LLC*, No. 10-9938, 2012 WL 255539, *2, 12 (C.D. Cal. Jan. 26, 2012) (defendant's statement that, if plaintiff "persisted in its attempts to collect" judgment, defendant "would start a new corporation or company and drain the assets of [defendant's corporation] so that [plaintiff] would not be able to collect," sufficient to justify piercing corporate veil).

securities filings, and by failing to take any action to change the conduct that gave rise to such violations, PRA Inc. and its officers and directors ratified PRA LLC's conduct. PRA Inc. is liable for the TCPA violations which it ratified.

(FACC ¶69.) "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(2) (2006). "Ratification is demonstrated through knowing acceptance after the fact by the principal of an agent's actions." *Bowoto*, 312 F. Supp. 2d at 1247. "Where the acts by the agent were not within the scope of the agency relationship, if they are not disavowed by the principal, failure to disavow may constitute ratification." *Id.* at 1248.

Defendants rely on their argument that the FACC does not allege an agency relationship to try to support their argument against ratification. (Def.'s Mem. 14-15.) As set forth above, Plaintiffs have alleged that PRA LLC has an agency relationship with Stern and PRA Inc. Moreover, Defendants' liability for ratifying PRA LLC's conduct is independent from the vicarious liability arising from PRA LLC acting within the scope of such agency:

> **[E]ven if plaintiffs' theory that [a subsidiary] was conducting itself as [a parent corporation's] agent during the incidents fails, plaintiffs have an independent claim under their ratification theory that [the parent's] subsequent ratification of [the subsidiary's] actions created an agency**. An agency may be created, and an authority may be conferred by . . . a subsequent ratification.

*Bowoto*, 312 F. Supp. 2d at 1247 (citation omitted; emphasis added). The Restatement also confirms that subsequent ratification can create vicarious liability even if the events giving rise to liability occurred outside of the scope of agency:

> [W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act. . . . [R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act.

Restatement (Third) of Agency, § 4.01 cmt. b. Defendants' authorities are inconsistent with Ninth Circuit cases, to the extent they hold that ratification cannot create an agency relationship after the fact. When a defendant "retain[s] the benefits of [another's] conduct even after confronted with evidence of foul play," the evidence supports a "finding of ratification, and thus the creation or evidence of an agency relationship." *In re Wolverton Assocs.*, 909 F.2d 1286,

1298 (9th Cir. 1990) (California law). "Ratification creates an agency relationship where 'the

affirmance by a person of a prior act which did not bind him but which was done or professedly

done on his account, whereby the act, as to some or all persons, is given effect as if originally

authorized by him.'" *Keams v. Tempe Technical Inst., Inc.*, 993 F. Supp. 714, 719 (D. Ariz.

1997) (quoting Restatement (Second) of Agency § 82 (1958)). "[A]n agency may be created and

an authority may be conferred by a precedent authorization or a *subsequent ratification.*" *Joint

Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate

Corp.*, 281 F.R.D. 422, 433 (C.D. Cal. 2012) (citation omitted; italics in original; California law).

*See also In re Gonda*, No. 10–58722, 2011 WL 5240154, *5 (Bankr. N.D. Cal. Oct. 31, 2011)

("[a]n agency relationship may be created by . . . subsequent ratification," citing, *e.g.*,

Restatement (Third) of Agency, § 4.01). Here, again, PRA Inc. tasked Stern with managing and

operating PRA LLC's call centers and PRA Inc. specifically based Stern's compensation on how

profitable the call centers were.

        Finally, Defendants argue that "an allegation of mere 'inaction' is insufficient to state a

claim under a ratification theory." (Def.'s Mem. 16.) As a matter of law, this position is dubious

at best. *In re Wolverton Assocs.*, 909 F.2d at 1298 (defendant who "retain[s] the benefits of

[another's] conduct even after confronted with evidence of foul play" ratifies that conduct);

*Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987) (jury could have

found defendant "ratified [other's] fraudulent activity, through knowledge and failure to act").

More significantly, the FACC plainly does not simply allege that PRA Inc. and Stern "made [no]

effort to change" PRA LLC's collection methods. (FACC ¶68.) The FACC alleges at great

length how PRA Inc. and Stern directly controlled and participated in the operation of PRA

LLC's call centers and dialers, and how PRA Inc. paid Stern for increasing revenue derived from

the call centers. (*Id.* ¶¶62-66.) Defendants' claim that PRA Inc. and Stern did nothing about PRA

LLC's TCPA violations is simply inconsistent with the FACC's allegations.

**IV.    Plaintiffs' TCPA Claim is an Appropriate Basis for an Attorneys' Fee Award Under
         California Code of Civil Procedure Section 1021.5**

        Plaintiffs seek a remedy of attorneys' fees under California Code of Civil Procedure

section 1021.5." (FACC ¶¶60, 70.) Section 1021.5 provides:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5.

First, Defendants attempt to attack Plaintiffs' request for attorneys' fees on the basis that the TCPA itself does not provide for attorneys' fees. Nothing in the TCPA suggests that Congress intended to prevent the states from creating additional remedies for aggrieved consumers, and the well-established presumption is that federal law will not preempt state law unless it was clearly Congress's intent to do so. Second, Defendants disingenuously argue that Plaintiffs' request for attorneys' fees fails under the terms of section 1021.5 itself. Plaintiffs have already obtained substantial injunctive relief for a broad swath of the California public; they expect to obtain more.

### A. Section 1021.5 Provides a Supplemental Remedy for Plaintiffs' Claims

Defendants stridently argue that Plaintiffs have not identified "a single case" where a court "has found fees under California § 1021.5 to be available in a TCPA action." (Def.'s Mot. at 18.) Of course, Defendants have failed to produce a single case where a court held that section 1021.5 does *not* apply to a TCPA claim. The Court should decline to be the first court to do so. By its own terms, section 1021.5 is not limited to California law claims. Courts – specifically including the California Supreme Court – have routinely awarded attorneys' fees under section 1021.5 for the vindication of rights arising under *federal law*. *See Maria P. v. Riles*, 43 Cal.3d 1281, 1293 (1987) (confirming section 1021.5 award where plaintiff "vindicated an important right affecting the public interest by protecting the confidentiality of the school records . . . as mandated by federal law," i.e., Family Educational Rights and Privacy Act of 1974); *Citizens Against Rent Control v. City of Berkeley*, 181 Cal.App.3d 213 (1986) (section 1021.5 award for vindication of First Amendment rights); *Slayton v. Pomona Unified School Dist.*, 161 Cal.App.3d 538 (1984) (section 1021.5 award for vindication of First Amendment rights, as well

as provisions of California law); *Schmid v. Lovette*, 154 Cal.App.3d 466 (1984) (confirming 1021.5 award against provision of state law that was "repugnant to the state and federal constitutions"). *See also La Jolla Friends of the Seals v. City of San Diego*, No. 08-1847, 2011 WL 3794920 (S.D. Cal. Aug. 26, 2011) (assessing whether plaintiff qualified for section 1021.5 award for litigation arising under federal law). Defendants offer no basis for distinguishing the TCPA from any other federal law as far as availability of fees under section 1021.5 is concerned. As section 1021.5 has been generally applied to federal claims, it should apply to Plaintiffs' TCPA claims as well.

### 1. Congress Did Not Preempt California from Providing an Additional Remedy to the TCPA

Defendants offer absolutely no support for the assertion that it would be "inimical for this federal court" to permit a state law to provide additional remedies for a claim under federal law. (Def.'s Mot. at 18.) To the extent that Defendants suggest the TCPA somehow preempts California law from supplying an additional remedy, the suggestion is contrary to the well-established presumption against preemption. When assessing federal preemption, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). *See also VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073, 1079 (E.D. Cal. 2009) ("there is a strong presumption that state law claims are not to be superseded unless that was the clear and manifest purpose of Congress"). There is no support for the position that Congress intended to preclude additional remedies under state law in the TCPA. The only mention of state law in the TCPA provided that states could impose "more restrictive intrastate requirements or regulations." 47 U.S.C. § 227(f)(1). Thus, the TCPA is entirely silent on the issue of supplemental state law remedies for interstate calls. "To the degree that state common law provides additional remedies for violations of federal [law] – and therefore provides additional incentives for potential defendants to comply with the federal standards – that law is not pre-empted." *Leipart v. Guardian Indus., Inc.*, 234 F.3d 1063, 1068 (9th Cir. 2000) ("state common-

law remedies based on a violation" of federal law "do not "amount to an additional or different 'requirement; rather, they merely provide [defendants] another reason for [defendants] to comply" with federal law; citation, punctuation omitted). Standing alone, the "mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies," such as the attorneys' fees sought here. *English v. General Elec. Co.*, 496 U.S. 72, 87 (1990). Where federal law "does not expressly conflict with state law and no such intent can be inferred from" the federal law, "[a]llowing an award of attorney's fees . . . does not stand as an obstacle to federal objectives." *United States v. Real Property Located at 41741 Nat. Trails Way, Daggett, Cal.*, 989 F.2d 1089, 1093 (9th Cir. 1993) (federal forfeiture law did not preempt lienholder's state law claim for attorneys' fees provided in deed contract). *See also Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 42 (1st Cir. 2006) (federal law did not preempt state statute that provided different standard for attorneys' fees, where "state substantive regimes" were not preempted under federal law).

## 2. Defendants' Argument that Section 1021.5 "Does Not Create an Independent Basis for Relief" Is Irrelevant

Defendants cites *Chubb Custom Insurance Co. v. Space Systems/Loral, Inc.*, No. 09-4485, 2010 WL 689940, *10 (N.D. Cal. Feb. 23, 2010) for the proposition that section 1021.5 "does not create an independent basis for relief." (Def.s' Mot. at 20.) Defendants misrepresent *Chubb*'s ruling. While *Chubb* dismissed the plaintiff's "claims for attorneys' fees because they are not independent claims," it is clear from the rest of the decision that the court only meant that a section 1021.5 fee award is an ancilliary *remedy* for a substantive claim, not an independent claim in its own right. *Chubb*, 2010 WL 689940, *10.

> Attorney fees under section 1021.5 are awarded upon motion. . . . [A] motion is not an independent right or remedy; it is confined to incidental matters in the progress of a cause. A motion relates to some question that is collateral to the main object of the action and is connected with and dependent upon the principal remedy. . . [Hence,] a motion under section 1021.5 does not create a new cause of action . . .

*Hosp. Sys., Inc. v. Office of Statewide Health*, 25 Cal.App.4th 1686, 1691-92 (1994) (quoted by *Chubb*, 2010 WL 689940, *10). Thus, *Chubb* only held that a claim for attorneys' fees under section 1021.5 was not properly pled as an independent cause of action. ***Indeed*, Chubb *did not**

1    ***rule that the plaintiff could not seek a fee award under section 1021.5 later on***: "Upon noticed

2    motion, the Court has the discretion to award attorneys' fees to the prevailing party if statutory

3    requirements are met." *Chubb*, 2010 WL 689940, \*10. *Chubb* does not apply here, because

4    Plaintiffs seek an attorneys' fee award under section 1021.5 as an additional remedy.

5        **B.**    **Plaintiffs' Prosecution of this Action Merits an Attorneys' Fees Award Under**
            **Section 1021.5**

6

7        Defendants also substantively challenge Plaintiffs' right to a fee award, asserting that

8    Plaintiffs have not met the statutory criteria under section 1021.5. At the outset, this challenge

9    should be delayed until after the litigation has concluded. Courts typically defer the

10    determination of whether a plaintiff is entitled to fees under section 1021.5 until after "the

11    motion to dismiss stage" because "determining whether awarding attorneys' fees under § 1021.5

12    is appropriate will necessarily require analyzing several factors." *Madrigal v. Tommy Bahama*

13    *Group, Inc.*, No. 09-08924, 2010 WL 4384235, \*10 (C.D. Cal. Oct. 18, 2010). *See also Willner*

14    *v. Manpower Inc.*, No. 11-02846, 2012 WL 1570789, \*10 (N.D. Cal. 2012) (declining, at the

15    "procedural stage" of motion to strike, to find that plaintiff could not obtain fee award under

16    section 1021.5); *Chubb*, 2010 WL 689940, \*10. The determination of whether litigation has

17    secured a benefit that merits a fee award under section 1021.5 "cannot be made until the benefit

18    is secure, in some cases after judgment is final." *Folsom v. Butte County Ass'n. of Governments*,

19    32 Cal.3d 668, 679 (1982). Fee awards under Section 1021 "are not part of the underlying cause

20    of action, but are incidents to the cause and are properly awarded after entry of [a final]

21    judgment[.]" *Washburn v. City of Berkeley*, 195 Cal.App.3d 578, 583 (1987) (correspondingly,

22    there is "no requirement that the intent to seek attorney fees under section 1021.5 must be [pled]

23    in the underlying action").

24        As a substantive matter, however, it is likely that a fee award under section 1021.5 will

25    ultimately be warranted. Section 1021.5 authorizes a fee award where three elements are met:

26    "(1) the action 'has resulted in the enforcement of an important right affecting the public

27    interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the

28    general public or a large class of persons,' and (3) 'the necessity and financial burden of private

enforcement are such as to make the award appropriate.'" *Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal.4th 1018, 1026 (2011) (citations omitted). Where a plaintiff pursues a "public interest class action not only for himself but on behalf of a class" and "ultimately obtained" a recovery for a class, "[n]o more is required to satisfy the [foregoing elements] of section 1021.5." *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.App.4th 1, 16-17 (2007). "Attorney fees may be awarded under Code of Civil Procedure section 1021.5 for consumer class action suits benefiting a large number of people." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 703 (2006) (citing *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 578 (2004) ("attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people")).

**Public Interest Element:** The public interest element "merely calls for an examination of the subject matter of the action –i.e., whether the right involved was of sufficient societal importance." *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1417 (1991). The rights satisfying the public interest element "are not necessarily confined to any one subject or field." *Woodland Hills Residents Ass'n, Inc. v. City Council*, 23 Cal.3d 917, 935 (1979).

Plaintiffs have already restrained PRA LLC from violating the privacy and statutory rights of a broad swath of Californians on an ongoing basis. *See Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943 (2012), *amended and reh'g denied by* – F.3d –, No. 11-56600, 2012 WL 6720599 (Dec. 28, 2012). Plaintiffs' claims can be "appropriately characterized as a consumer protection action": it has "long been judicially recognized [that consumer protection class actions are] vital to the public interest" and fulfill section 1021.5's public interest requirement. *Beasley*, 235 Cal.App.3d at 1418 (action to recover fees on behalf of hundreds of thousands of banking customers met public interest element). *See also Colgan*, 135 Cal.App.4th at 703 (action enforcing "consumer protection laws," enjoining defendant from "future misleading representations," met public interest element); *Notrica v. State Compensation Ins. Fund*, 70 Cal.App.4th 911, 954-55 (1999) (lawsuit involved rights of "sufficient strength or societal importance to merit" section 1021 award where it obtained injunction affecting

"business practices as they relate[d] to some 250,000" class members).[8]

**Significant Benefit Element:** "The significant benefit [element] calls for an examination whether the litigation has had a beneficial impact on the public as a whole or on a group of private parties which is sufficiently large to justify a fee award." *Beasley*, 235 Cal.App.3d at 1417 (followed by *Graham*, 34 Cal.4th at 578). The Ninth Circuit recently upheld the Court's preliminary injunction against PRA LLC. *See Meyer*, 696 F.3d 943, *amended and reh'g denied by* 2012 WL 6720599. The injunction protects at least 613,797 individuals with California area code telephone numbers from further TCPA violations. (*Cf.* Dkt. No. 11-1008 #62 at 4.) Far smaller classes have satisfied the substantial benefit element. *Cf. Estrada*, 154 Cal.App.4th at 16-17 (209 class members)

**Financial Burden Element:** Section's 1021.5's financial burden element is met where "the cost of the claimant's legal victory transcends his personal interest, that is, [did the] lawsuit place a [financial] burden on the plaintiff out of proportion to his individual stake in the matter." *Serrano*, 52 Cal.4th at 1026 (citations, punctuation omitted). The "financial burden" analysis requires estimating the monetary value of the case (discounting for the possibility that the case would fail as viewed from "the time the vital litigation decisions were being made"), and to compare that to the costs of litigation (including fees, expenses, etc.) required to prevail. *In re Conservatorship of Whitley*, 50 Cal.4th 1206, 1215-16 (2010) (citation, punctuation omitted). A fee award under section 1021.5 is appropriate unless "the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs." *Id*. at 1216 (same). Moreover, even if the estimated value of this case outstrips litigation costs "by a substantial margin," "the public benefits from the litigation are so significant" that a fee award under section

---

[8]   In contrast, Defendants' cases are inapposite in large part because those cases dealt with claims which benefited only the plaintiff or a very narrow segment of society. *Cf. Manantan v. National City Mortg.*, No. 11- 00216, 2011 WL 3267706, *11 (N.D. Cal. July 28, 2011) (dismissing claim under section 1021.5 where plaintiff only sought to enjoin foreclosure of her home, and failed to explain any public benefit from such injunction); *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-2562, 2005 WL 5517732, 11 (S.D. Cal. May 31, 2005) (no public interest articulated in trade secret litigation); *Jutkowitz v. Bourns, Inc.*, 118 Cal.App.3d 102, 113 (1981) (section 1021.5 did not apply where plaintiff had "a single objective and that was to benefit himself directly and other minority shareholders indirectly").

1021.5 is "appropriate" where the lawsuit is, e.g., a "consumer protection action [that] has directly benefited hundreds of thousands of [consumers.]" *Beasley*, 235 Cal.App.3d at 1417. *See also Lyons v. Chinese Hosp. Ass'n*, 136 Cal.App.4th 1331, 1353 (2006).

Plaintiffs' individual stakes for this litigation are minimal, and the costs of litigation are high. For instance, Meyer alleges he received four calls from Defendants: the most he could ever recover under those allegations is *$6,000*. (*Cf.* FACC ¶35 *with* 47 USC § 227(b)(3) ($500 per violation, treble damages if violations were willful)). The economic stakes for the other California Plaintiffs are in the same proportion. (FACC ¶¶39-43.) Conversely, Meyer has obtained injunctive relief against further TCPA violations on behalf of at least 613,797 other individuals. (*Cf.* Dkt. No. 11-1008 #62 at 4.) Meyer pursued this injunctive relief through PRA LLC's appeal. It should be self-evident that the costs of such litigation vastly exceed $6,000. Moreover, Meyer pursued injunctive relief for other class members even though "PRA assured the court it would stop calling Meyer without making any assurance regarding other members of the provisional class." *Meyer, LLC*, 2012 WL 4840814, *5. Cf. Lyons*, 136 Cal.App.4th at 1354-55 (section 1021.5 award proper where plaintiff "continued to pursue [injunctive relief] even after the arbitrator denied him any recovery on the tort claims and he no longer had any personal stake in the outcome").

Defendants argue that the very fact that Plaintiffs seek money damages disqualifies them from a fee award under section 1021.5. Defendants are simply wrong on the law. "A pecuniary interest in the outcome of the litigation is not disqualifying." *Id.* at 1352. The fact that Plaintiffs' "personal interests . . . were sufficient to induce them to bring this action is irrelevant." *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 321 n. 11 (1983). Indeed, absent a "concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action." *Id.*

## IV.   Conclusion

Plaintiffs have adequately alleged PRA Inc. and Stern's direct and vicarious liability under the TCPA. Defendants' gambit to dismiss Plaintiffs' request for fees under section 1021.5 should also be rejected.

Dated: January 8, 2013          By:    _____s/Ethan Preston_____

James O. Latturner, Esq.
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
dedelman@edcombs.com
ccombs@edcombs.com
jlatturner@edcombs.com
cmiller@edcombs.com

Ethan Preston, Esq. (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Douglas J. Campion, Esq. (75381)
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
(619) 299-2091 (telephone)
(619) 858-0034 (facsimile)
doug@djcampion.com

*Co-Lead Counsel and Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that I served the foregoing document and this Certificate of Service upon the parties listed below by causing the foregoing document to be transmitted to the Electronic Filing System in the manner prescribed by the Court's Administrative Policies and Procedures Manual on the date below:

| | |
|---|---|
| Christopher William Madel<br>Barry M. Landy<br>Denise S. Rahne<br>Jennifer M. Robbins<br>Nicole S Frank<br>Robins, Kaplan, Miller & Ciresi L.L.P.<br>2800 LaSalle Plaza<br>800 LaSalle Avenue<br>Minneapolis, Minnesota 55402-2015<br>(612) 349-8500 (telephone)<br>(612) 339-4181 (facsimile)<br>cwmadel@rkmc.com<br>bmlandy@rkmc.com<br>dsrahne@rkmc.com<br>jmrobbins@rkmc.com<br>nsfrank@rkmc.com | Henry A. Turner<br>Turner Law Offices, LLC<br>403 W Ponce de Leon Avenue, Suite 207<br>Decatur, Georgia 30030<br>(404) 261-7787 (telephone)<br>(404) 377-1053 (facsimile)<br>hturner@tloffices.com<br><br>Samuel M. Hill<br>The Law Offices of Sam Hill, LLC<br>265 Riverchase Parkway East, Suite 202<br>Hoover, Alabama 35244<br>205-250-7776 (telephone)<br>sam@samhilllawofcs.com<br><br>*Attorneys for Plaintiff Kimberly Bartlett, on her own behalf, and behalf of all others similarly situated* |
| Julia Veronica Lee<br>Robins Miller Kaplan & Ciresi LLP<br>2049 Century Park East, Suite 3400<br>Los Angeles, California 90067<br>(310) 552-0130 (telephone)<br>(310) 229-5800 (facsimile)<br>jvlee@rkmc.com | Henry A. Turner<br>Turner Law Offices, LLC<br>403 W Ponce de Leon Avenue, Suite 207<br>Decatur, Georgia 30030<br>(404) 261-7787 (telephone)<br>(404) 377-1053 (facsimile)<br>hturner@tloffices.com |
| Lawrence A. Farese<br>Robins, Kaplan, Miller & Ciresi, LLP<br>711 5th Ave S, Suite 201<br>Naples, Florida 34102<br>(239) 213-1973 (telephone)<br>(239) 213-1970 (facsimile)<br>lafarese@rkmc.com | Mauricio Arcadier<br>Arcadier & Associates, PA,<br>2815 West New Haven Avenue, Suite 304<br>West Melbourne, Florida 32904<br>(321) 953-5998 (telephone)<br>(321) 953-6075 (facsimile)<br>office@wamalaw.com |
| Lisa Lorraine Heller<br>Robins Kaplan Miller & Ciresi LLP<br>One Atlantic Center<br>1201 West Peachtree Street, Suite 2200<br>Atlanta, GA 30309-3453<br>(404) 760-4300 (telephone)<br>(404) 233-1267 (facsimile)<br>llheller@rkmc.com | *Attorneys for Plaintiff Karen Harvey, on her own behalf, and behalf of all others similarly situated*<br><br>Ethan Preston (263295)<br>PRESTON LAW OFFICES<br>8245 North 85th Way<br>Scottsdale, Arizona 85258<br>(480) 269-9540 (telephone) |

---

Barbara Fernandez
David Palmer Hartnett
Hinshaw & Culbertson LLP
9155 S Dadeland Boulevard
Suite 1600
Miami, FL 33156-2741
305-358-7747
Fax: 305-577-1063
bfernandez@hinshawlaw.com

Nathan L. Horton
Portfolio Recovery Associates, LLC
P O Box 41113
Nashville, TN 37204
(888) 772-7326 x. 18396
Fax: (757) 518-0860
nhorton@portfoliorecovery.com

*Attorneys for Defendant Portfolio Recovery
Associates, LLC*

Alexander S. Vesselinovitch
Emily J Prentice
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661
(312) 902-5200 (telephone)
avesselinovitch@kattenlaw.com
emily.prentice@kattenlaw.com

Robert E. Sickles
Hinshaw & Culbertson, LLP
100 South Ashley Drive, Suite 500
Tampa, Florida 33602
(813) 868-8838 (telephone)
(813) 276-1956 (facsimile)
rsickles@hinshawlaw.com

*Attorneys for Defendant Portfolio Recovery
Associates, LLC*

Douglas J. Campion (75381)
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
(619) 299-2091 (telephone)
(619) 858-0034 (facsimile)
doug@djcampion.com

Abbas Kazerounian
Kazerounian Law Group
2700 North Main Street, Suite 1000

(866) 509-1197 (facsimile)
ep@eplaw.us

David C. Parisi
Suzanne Havens Beckman
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dparisi@parisihavens.com
shavens@parisihavens.com

*Attorneys for Plaintiff Jesse Meyer, on his
own behalf, and behalf of all others
similarly situated*

Daniel A Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
dedelman@edcombs.com
ccombs@edcombs.com
jlatturner@edcombs.com
cmiller@edcombs.com

Keith James Keogh
Craig M. Shapiro
Timothy J. Sostrin
Keogh Law, Ltd.
101 North Wacker Drive, Suite 605
Chicago, Illinois 60606
(312) 726-1092 (telephone)
(312) 726-1093 (facsimile)
Keith@Keoghlaw.com
cshapiro@keoghlaw.com
tsostrin@keoghlaw.com

*Attorneys for Plaintiffs Jeremy Frydman and Sam
Marin, on their own behalf, and behalf of all others
similarly situated*

Paul K. Guibao
Weisberg & Meyers, LLC
1448 Madison Avenue
Memphis, TN 38104
(602) 445-9819
pguibao@attorneysforconsumers.com

*Attorney for Plaintiffs Kenneth McCormick and Janet
McCormick*

Santa Ana, California 92866
(800) 400-6808 (telephone)
(800) 520-5523 (facsimile)
ak@kazlg.com

Joshua Swigart
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, California 92108
(619) 233-7770 (telephone)
(619) 297-1022 (facsimile)
josh@westcoastlitigation.com

*Attorneys for Plaintiff Danny Allen,*
*Jr., on his*
*own behalf, and behalf of all others*
*similarly situated*

Scott David Owens
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

*Attorney for Plaintiffs Christine*
*Suarez and Carlos Suarez*

Dated: January 8, 2013          By: ___s/David C. Parisi_____
                                     David C. Parisi
                                     Suzanne Havens Beckman
                                     Parisi & Havens LLP
                                     15233 Valleyheart Drive
                                     Sherman Oaks, California 91403
                                     (818) 990-1299 (telephone)
                                     (818) 501-7852 (facsimile)
                                     dparisi@parisihavens.com
                                     shavens@parisihavens.com