James O. Latturner, Esq.
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
jlatturner@edcombs.com

Ethan Preston, Esq. (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Douglas J. Campion, Esq. (75381)
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
(619) 299-2091 (telephone)
(619) 858-0034 (facsimile)
doug@djcampion.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT FOR

## THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 11-md-02295-JAH-BGS<br><br>Member cases:<br>    All member cases<br><br>Hon. John A. Houston<br>Hon. Bernard G. Skomal<br><br>**PARTIES' JOINT REPORT ON STATUS OF MATTERS BEFORE THE FCC RE: STAY OF CASE ON PRIMARY JURISDICTION GROUNDS** |

## PARTIES' JOINT REPORT ON THE STATUS OF MATTERS BEFORE THE FCC RE: STAY OF CASE ON PRIMARY JURISDICTION GROUNDS

Pursuant to the Court's May 20, 2014 Order, Plaintiffs Jeremy Frydman, John Howard, Sam Marin, Jesse Meyer, Fred Jury, and Danny Allen (collectively, "Plaintiffs") and Defendants Portfolio Recovery Associates, LLC, PRA Group, Inc., and Neal Stern's (together, "PRA") submit their joint report. (*See* ECF No. 145.)

## I.   Plaintiffs' Position

On May 20, 2014, the Court granted PRA's motion to stay for primary jurisdiction. (ECF No. 145.) The Court's order staying the case identified five petitions pending before the FCC which purportedly sought guidance on the meaning of the term "capacity," a component of the automated telephone dialing system ("ATDS") element of Plaintiffs' Telephone Consumer Protection Act ("TCPA") claims. *See* 47 U.S.C. § 227(a)(1). The Court noted the Defendants' contention "that there is no evidence demonstrating the FCC is unlikely to issue an opinion soon, noting the FCC's recent activity appears to indicate an intent to resolve the issue shortly." (*Id*. at 5.) The Court also noted Plaintiffs' assertion that Defendants' "president, chairman, and chief executive officer Steven Fredrickson recently made statements claiming that FCC rulings would likely not be issued 'any time soon' and that the ruling will likely not change any prior rulings." (*Id*.) Finally, the Court stated it would monitor the stay and ordered the parties to file a joint status report "to advise the Court as to the status of the matters currently before the FCC," "[i]n order to alleviate any concerns regarding delay." (*Id*.)

**No TCPA-Related Petitions Remain on the FCC Circulation List:**[1] In their original motion, PRA justifed the stay based on the FCC's placement of the

---

[1]   The FCC's circulation list is "a list of Commission-level items that have been circulated to the Commissioners and are pending action by the full Commission," which "is updated on a weekly basis." FCC, *Most Active Proceedings*, *at* https://www.fcc.gov/rulemaking/most-active-proceedings (viewed November 19, 2014).

petitions from Communication Innovators and GroupMe, Inc./Skype Communications S.A.R.L. on the FCC's Circulation List. On March 27, 2014, the FCC in part granted GroupMe's March 1, 2012 petition. (Preston Decl. ¶3.) The FCC's order focused on consent, and made "no finding as to whether it uses an autodialer to send the messages at issue and dismiss that portion of GroupMe's original request without prejudice." (Ex. 1 to Preston Decl. at 1 n.2) Because GroupMe withdrew the portion of its petition relating to capacity, "the FCC's later decision on this petition bear little, if any, relevance to this case." *Beiler v. GC Servs. LP*, No. 13-869, 2014 WL 5531169, *2 (M.D.N.C. Nov. 3, 2014) (denying motion to stay on primary jurisdiction grounds). On July 14, Communication Innovators withdrew its petition (which was on the Circulation List), and essentially substituted out in favor of the ACA International petition (which was not on the Circulation List). (Preston Decl. ¶4.) The Communication Innovators petition is "irrelevant given that it has now been withdrawn." *Beiler*, 2014 WL 5531169, *2.

*As of today, there are no TCPA-related items on the Circulation List*. (Preston Decl. ¶2.) Thus, there is no evidence that FCC is any closer to providing the dispositive guidance on the claims at issue and, indeed, it appears the FCC is actually further away from any dispositive order interpreting the TCPA's ATDS provision than it was in May 2014.

**YouMail, Inc.:** On April 19, 2013, YouMail, Inc. filed its petition for an expedited declaratory rule-making with the FCC. YouMail was a defendant in a case captioned *Gold v. YouMail, Inc.*, No. 12-cv-00522, pending in the United States Court for the Southern District of Indiana. (Preston Decl. ¶6.) On May 8, 2014, the parties in the *Gold* case stipulated to dismissing the case on an individual basis. (*Id.*) There is no evidence the FCC is any closer to ruling on YouMail's petition. (*Id.* ¶5.)

Courts have concluded that the pendency of the YouMail petition no longer

warrants staying TCPA cases under the primary jurisdiction doctrine, if it ever did. *Cf. Beiler*, 2014 WL 5531169, *4 (rejecting motion to stay based on YouMe and ACA International petition as "invit[ation for] an extended delay as to when, if ever, the FCC will overturn its own rules . . . referral to the FCC on the predictive dialing issue, therefore, would be too speculative"); *Jordan v. NationStar Mortgage*, No. 14-00787, 2014 WL 5359000, *10 (N.D. Cal. Oct. 20, 2014) (denying motion to stay based on, e.g., YouMail petition; "[t]here is no guarantee that the FCC will rule on these issues imminently, let alone that a ruling will determine the outcome of this case"; comparing with *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) where "the FCC's Notice of Proposed Rulemaking demonstrates that the agency is actively considering" the particular issue); *McKenna v. WhisperText*, No. 14-00424, 2014 WL 4905629, *4 (N.D. Cal. Sept. 29, 2014) (denying stay based on, e.g., YouMail petition; "it is entirely unclear whether the FCC will issue a ruling pertinent to this case, since it is not obliged to [rule on petitions]; FCC has not previously ruled on the issues posed by [petitions], so there is little indication they will do so anytime soon"); *Espejo v. Santander Consumer USA, Inc.*, No. 11-8987, 2014 WL 4347185, *3 (N.D. Ill. Aug. 28, 2014) (denying stay based on, e.g., YouMail petition; "[a]s we have surpassed the three-year mark in this case, it would be unduly burdensome to stay the proceedings for an undetermined period of time to await the FCC's determinations without any idea about when a decision will be rendered")

**Professional Association for Customer Engagement:** On October 18, 2013, Professional Association for Customer Engagement ("PACE") filed its petition for declaratory rulemaking. On November 19, 2013, the FCC published a request for comments on the petition. Since then, there has been no sign on progress towards the resolution or disposition of the PACE petition. Courts have not found the PACE petition warrants a stay on primary jurisdiction grounds for the same reasons they have refused stays based on the YouMail petition. *See*

*Jordan*, 2014 WL 5359000, at *10 (denying stay based on, e.g., PACE petition); *McKenna*, 2014 WL 4905629, at *4 (same); *Espejo*, 2014 WL 4347185, *2 (same).

**GlideTalk:** On October 28, 2013, Glide Talk, Ltd. filed its petition for expedited declaratory ruling with the FCC. Like the YouMail petition, the Glide Talk petition appears to be arise out a class action lawsuit filed in the Northern District of Illinois. (Preston Decl. ¶7.) That class action was apparently been settled on or about May 20, 2014. (*Id.*) Glide Talk last submitted a reply to comments on that petition on January 22, 2014. Since then, there has been no sign on progress towards the resolution or disposition of the Glide Talk petition. Again, Glide Talk is not a sound basis for a stay on primary jurisdiction grounds. *McKenna*, 2014 WL 4905629, at *4 (denying stay based on, e.g., Glide Talk petition).

**ACA International:** PRA ignores all the petitions on which its original motion was based in favor of a new petition filed by ACA International on January 31, 2014. Again, the ACA International petition is not on the FCC's Circulation List. Courts have rejected the ACA International petition as a basis for a stay based on primary jurisdiction. *See Beiler*, 2014 WL 5531169, *2 (citing *Pimental v. Google, Inc.*, No. 11-02585, 2012 WL 1458179, *3 (N.D. Cal. Apr. 26, 2012); denying stay based on, e.g., ACA International petition); *Shehan v. Wells Fargo Bank N.A.*, No. 14-00900, 2014 WL 5529365, *3 (N.D. Ala. Nov. 3, 2014) (rejecting primary jurisdiction stay in TCPA case based on, e.g., ACA International petition even though defendant expected "concrete movement on both petitions within the next six months"; "there is no indication the FCC will make any kind of ruling in the near future or at all"; punctuation omitted); *Jordan*, 2014 WL 5359000, at *10 (denying stay based on, e.g., ACA International petition); *Knapp-Ellis v. Stellar Recovery, Inc.*, No. 13-01967, 2014 WL 5023632, *3 (W.D. Wash. Oct. 8, 2014) (denying motion to stay where defendant had not "shown that adjudication of whether its system can be classified as an ATDS, as this term is used in the TCPA, presents particularly complicated technical questions" or that

FCC ruling on, e.g., ACA International petition was "imminent"; while FCC sought comments on some petitions, "there is no indication that a ruling on these Petitions is forthcoming"); *Bates v. Dollar Loan Center, LLC*, No. 13-01731, 2014 WL 4231302, *3 (D. Nev. Aug. 26, 2014).

Indeed, when the court in *Heinrichs v. Wells Fargo Bank N.A.*, No. 13-05434 (N.D. Cal. Nov. 22, 2013) asked the FCC to provide a status update to the FCC's ruling on the ACA International petition, the FCC responded:

> The Commission has solicited comments on this subject from interested parties. Its staff has reviewed those comments and is formulating recommendations that will be presented to the FCC's commissioners for a vote. Although substantial progress has been made, in response to the Court's specific question, Commission counsel does not anticipate that the agency will issue a final decision on either of the pending petitions by the middle of October 2014. *Nor is Commission counsel in a position to predict when the Commission will vote to approve a final order on this matter.*

(Ex. 7 to Preston Decl. at 2 (emphasis added).) As PRA notes below, the primary jurisdiction issue in *Heinrichs* was consent. The ACA International petition covers both consent and capacity, and one can presume that the entire petition would be resolved (if at all) at the same time.

**The Court Should Lift the Stay:** The courts in *Heinrichs* (ECF No.62) and in *Jordan*, 2014 WL 5359000 originally stayed those actions because of pending FCC petitions and both lifted the original stays when it appeared the FCC had not ruled and could not say when a ruling would occur. (*Cf.* Ex. 7 to Preston Decl. at 2.) In *Jordan*, the court held: "The obligation of the court to provide a just, speedy and inexpensive determination of this case further weighs against the possible benefits of awaiting an FCC decision on the petitions." *Jordan*, 2014 WL 5359000, at *1 (citing Fed. R. Civ.P. 1). This Court should follow that result the same.

After a completely fruitless six-month delay in this case, the cheerful claim that dispositive rulings from the FCC are "just around the corner" rings hollow. The cases cited herein address some of the precise arguments at issue here, and found there was no good cause for a stay when there is no definite end in sight to

various petitioners' endless efforts to revise the FCC's rulings on the definition of an ATDS.

Extending the stay is not a prudent application of the primary jurisdiction doctrine. Since 2002, the FCC has received 149 petitions concerning the TCPA— an average of over 12 per year, and that rate is increasing. (Ridenhour Decl. ¶3.) The fact is that the FCC does not act on the vast majority of petitions concerning the TCPA. (*Id*. ¶4.) And when the FCC did act, it took an average of 15 months to do so. (*Id*. ¶5.) Plaintiffs assert that the FCC's petition process has been hijacked and abuse by defendants or potential defendants who seek create a justification for indefinite delays of TCPA cases under the primary jurisdiction doctrine.[2] Certainly, TCPA litigation directly prompted the YouMail and Glide Talk petitions. (Preston Decl. ¶¶5, 6.) Below, PRA cites to testimony from FCC Commissioner Tom Wheeler that the FCC plans to resolve "more than one-third" of the pending TCPA-related petitions in the next several months. In Jordan, the court rejected the reliance on this statement: "there is no guarantee that the FCC will be able to follow through on this plan, or that the petitions relevant to this case are among those the agency plans to resolve. Under these circumstances, a stay is not warranted." *Jordan*, 2014 WL 5359000, at *10. The stay here presents the exact same situation. The withdrawal of the Communication Innovators petition, and its substitution for the January 31, 2014 ACA International petition is the most troubling. The Communication Innovators petition was withdrawn just as the FCC prepared to rule on it, thereby removing the uncertainty of the definition of the ATDS created by the petition and eliminating the basis for further stays under the primary jurisdiction doctrine. PRA wants the Court to ignore the wasted time and lack of progress on the five petitions cited in PRA's original motion, and focus only on the ACA International petition. But in six months, the case will be in the

---

[2]   If the Court nonetheless extends the stay, Plaintiffs at least ask for limited discovery to demonstrate petitioners are abusing the FCC rulemaking process for this purpose.

same posture in six months that it is now—except that PRA will have some new petition it believes should stay the case. ***If the Court stays Plaintiffs' claims until all TCPA-related FCC petitions are finally resolved, Plaintiffs' claims will never be resolved.*** That might serve PRA's interests, but it is not justice.

The FCC has already twice held that predictive dialers constitute ATDSs.[3] Defendants have claimed the petitions used to support their motion fell outside the scope of these orders because they concerned "capacity" rather than whether predictive dialers constitute ATDSs. This is a shell game; "capacity" merely a component of the ATDS definition. Regardless of how the petitions phrase the relief they seek, if they seek to alter whether and how the TCPA applies to predictive dialers, they are inevitably relitigating adverse decisions by the FCC. Waiting for an administrative agency to reverse itself is not a proper use of the primary jurisdiction doctrine.[4]

> The repetitious nature of the requests to the FCC to reconsider its rules on the scope of the TCPA suggests that deferring to the agency on this issue only would add fuel to a never-ending cycle at the cost of delaying resolution of the underlying dispute. The impact of such delay on the expeditious resolution of disputes and the interest of providing certainty to the parties here and others similarly situated outweigh any potential benefits of deferring to the FCC on this issue, which are minimal at best.

*Frydman v. Portfolio Recovery Assocs., LLC*, No. 11-524, 2011 WL 2560221, *7 (N.D. Ill. June 28, 2011). Accordingly, the overwhelming prevailing trend amongst

---

[3]   *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, FCC Docket No. 07-232, 23 FCC Rcd. 559, 2008 WL 65485 (Jan. 4, 2008) ("*ACA Ruling*"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, 18 FCC Rcd. 14014, 2003 WL 21517853 (July 3, 2003) ("*2003 Report and Order*").

[4]   The "primary jurisdiction doctrine does not apply if the [agency] has already construed a particular [statute or regulation] or clarified its underlying factors." *United States v. Yellow Freight System, Inc.*, 762 F.2d 737, 740 (9th Cir. 1985) (citing *United States v. W. Pac. R. Co.*, 352 U.S. 59, 69 (1956)).The purposes of the primary jurisdiction doctrine are not "served by using the doctrine when the agency has already said what it thinks about [the relevant statute or regulation.]" *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1313 (9th Cir. 1977) (citing *W. Pac. R. Co.*, 352 U.S. at 69).

courts is to reject FCC petitions on "capacity" as a basis to stay TCPA cases under the primary jurisdiction doctrine.[5]

      The Court should also take into account the significant delay in this proceeding. *Jordan*, 2014 WL 5359000, at *1 (impact of delay from primary jurisdiction stay "on the expedient resolution of disputes and the interest of providing certainty to the parties here and to others similarly situated outweigh any potential benefits of deferring to the FCC"). The earliest constituent action in this

---

[5]   *See Knapp-Ellis*, 2014 WL 5023632, at *3; *Prater v. Medicredit Inc.*, No. 14-159, 2014 WL 4652942, *4, *5 (E.D. Mo. Sept. 18, 2014) (denying stay where "the FCC has held, on two occasions, that a predictive dialer is an ATDS," and "there is no assurance when or if the FCC will rule on the salient petitions or whether such rulings would be favorable to Defendants," but "a lengthy delay resulting from a stay would prejudice Plaintiff as well as potential class members"); *Holcombe v. Credit Protection Ass'n, LP*, No. 14-14, 2014 WL 4252277, *3 (M.D. Ga. Aug. 28, 2014) ("given the uncertainty as to when the FCC will issue rulings and whether the FCC will change its prior positions on these issues, the Court finds that a stay will add unnecessary delay and expense to the parties in the present litigation"); *Bates*, 2014 WL 4231302, at *3; *Morse v. Allied Interstate, LLC*, No. 13-00625, 2014 WL 2916480, *2 (M.D. Pa. June 26, 2014) (as question of "whether dialing equipment must have a current capacity to generate and dial random or sequential numbers in order to be considered an Automatic Telephone Dialing System [not] presented to the FCC for an initial, first-impression interpretation but for reconsideration or clarification, a stay based on the doctrine of primary jurisdiction is not appropriate"); *Murray v. Diversified Consultants, Inc.*, No. 13-3074, 2014 WL 2574042, *2 (M.D. Fla. June 9, 2014) ("the interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC, rather than postponing this case for an indefinite amount of time based on the possibility that the FCC *may* decide to reconsider its past positions"); *Trainor v. Citibank, Nat'l Ass'n*, No. 14-62, 2014 WL 2574527, *2 (D. Minn. June 9, 2014) ("[i]t may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess. . . [a]n indefinite stay is not in any party's interest," notwithstanding six pending FCC petitions on whether "a dialing system must have the present, as opposed to the theoretical, capacity to randomly or sequentially generate telephone numbers"); *Fenescey v. Diversified Consultants, Inc.*, No. 14-347, 2014 WL 2526571, *3 (M.D. Pa. June 4, 2014); *Swope v. Credit Mgmt., LP*, No. 12-832, 2013 WL 607830, *4 (E.D. Mo. Feb. 19, 2013) ("The interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC that have been consistently applied by the courts, rather than postponing this case for an indefinite amount of time because the possibility that the FCC may decide to reconsider its past position"); *Pimental*, 2012 WL 1458179, at *3, *5 (refusing stay based on GroupMe petition because "court is suited to resolve issues of statutory interpretation of the phrase 'prior express consent' and the term 'capacity'" and because "there [was] no indication that the FCC has taken up or will take up the issues").

---

consolidated multidistrict litigation proceeding, *Allen v. Portfolio Recovery Associates, LLC*, No. 10 CV 2658, was filed on December 23, 2010. The other constituent class actions were filed in throughout early 2011. On December 21, 2011, the Judicial Panel for Multidistrict Litigation consolidated the constituent actions and transferred them to this Court. (ECF No. 1.) Discovery in this case has been stayed since January 17, 2012—nearly three years at this point. (ECF No. 5.) No one can pretend further delay is a neutral, non-partisan factor: it inevitably favors PRA.

> The delay [in multidistrict litigation cases] inevitably serve the interests of defendants: [Procedural barriers to trial] perversely and sharply skews the MDL bargaining process in favor of defendants. Consider: All litigants bargain in the shadow of trial. Those averse to the inevitable uncertainties of the direct democracy of the American jury will factor the risks of trial into their settlement postures. Failure to arrive at a mutually acceptable settlement should, and in most cases does, result in a trial. In MDL practice, however, it is solely the transferee judge who controls the risk of trial. The litigant who refuses to settle can never get back to his home court to go before a local jury unless the transferee judge agrees.

*DeLaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d 147, 154-55 (D. Mass. 2006) ("as compared to the processing time of an average case, MDL practice is slow, very slow," citations omitted). The record does not support further delay in this case.

## II.   PRA's Position

PRA respectfully request that the Court continue its stay of all member and tag-along cases pending a decision by the FCC on the definition of the term "capacity" under the Telephone Consumer Protection Act (47 U.S.C. § 227(a)(1)). As of this date, the FCC has not yet issued a ruling regarding the term "capacity" and has petitions upon which the FCC has sought public comment that would address this question.[6]

---

[6] ACA International, Petition for Rulemaking of ACA International, CG Docket No. 02-278 (filed Jan. 31, 2014); ACA International, Comments, CG Docket No. 02-278 (filed Mar. 24, 2014) and Reply Comments (filed Apr. 8, 2014); Professional Association for Customer Engagement, Petition for Expedited Declaratory Ruling and/or Expedited Rulemaking of the Professional Association

The timing of the FCC's resolution of the Petition submitted by ACA International ("ACA"), in particular, is promising given ACA's November 3, 2014 correspondence to the FCC submitted in follow-up to their October 30, 2014 meeting,[7] of course, with the current net neutrality issue before the FCC[8], we do not know when a decision on the ACA petition will be issued. As noted in the letter, the FCC and ACA met to discuss ACA's Petition and the recent law supporting ACA's request that the FCC clarify that: "(1) just because a predictive dialer can be an automatic telephone dialing system ('ATDS') does not mean that a predictive dialer must be an ATDS under the Telephone Consumer Protection Act ("TCPA")" and "(2) 'capacity' for TCPA purposes means present ability of a dialing system at the time the call is made."[9] ACA enclosed, for the FCC's consideration, the recent decision from this Court in *Marks v. Crunch San Diego, LLC*.[10] And, as noted by the ACA, the *Marks* decision is consistent with the United States' position in the *De Los Santos* case in which the United States confirmed that "capacity" under the TCPA means "present ability" at the time calls were being made, to store or produce and call numbers from a number generator.[11] And as this Court is well aware, the *Marks* decision and the United States' position in

for Customer Engagement ("PACE"), CG Docket No. 02-278 (filed Oct. 18, 2013); PACE, Comments, CG Docket No. 02-278 (filed Mar. 24, 2014); *see also* Communication Innovators, Petition for Declaratory Ruling, CG Docket No. 02-278 (filed June 7, 2012), withdrawn, July 14, 2014 (noting that the legal issues raised in its petition would be encompassed by other "petitions (which have a more recent record), including on the clarification requested in the Petition for Rulemaking of ACA International").

[7] November 3, 2014 letter from ACA International to FCC available at http://apps.fcc.gov/ecfs/document/view?id=60000978459.

[8] Edward Wyatt, *Obama Asks FCC to Adopt Tough Net Neutrality Rules*, N.Y. TIMES (Nov. 10, 2014), http://www.nytimes.com/2014/11/11/technology/obama-net-neutrality-fcc.html?_r=0.

[9] *Id.* (emphasis in original).

[10] *Marks v. Crunch San Diego, LLC,* No. 14-cv-00348, 2014 U.S. Dist. LEXIS 152923 (S.D. Cal. Oct. 23, 2014) (rejecting broad interpretations of "ATDS" beyond the statute's language and granting summary judgment noting that because defendant's "platform lacks a random or sequential number generator, it is not currently an ATDS").

[11] United States' Memorandum in Support of the Constitutionality of the Telephone Consumer Protection Act, 9:13-cv-80670-DPG, 8-11 & n.7 (S.D. Fla. Jan. 31, 2014).

*De Los Santos* are consistent with the arguments on the definition of ATDS and issue of "capacity" that PRA has consistently raised in this action through repeated submissions explaining that PRA's dialers do not have the statutory-required present capacity, at the time calls were being made to store or produce and call numbers from a number generator, and that PRA's dialers have never had that capacity.

Plaintiffs take issue with PRA's reliance the ACA petition despite the recent end to the comment period on ACA's petition and the even more recent meetings held directly between ACA and the FCC on the issue of "capacity" as used in the definition of ATDS under the statute. But Plaintiffs cannot ignore: (1) that ACA's petition is on point to address a central matter in this action and has replaced the Communications Innovators petition for determination by the FCC; (2) the FCC Commissioner's statement that FCC "needs to address this inventory of petitions <u>as soon as possible</u>"[12]; and (3) the even more recent statement by FCC Chairman Wheeler that the FCC is reviewing the records for petitions on specific questions about the TCPA, "including what types of equipment are covered by the statute" and the "plan to have many of them resolved within the next several months" by "grouping petitions together where there are common issues. This approach will likely include an order <u>currently under active consideration that is intended to resolve more than one-third of the pending TCPA petitions</u>."[13]

Plaintiffs also point to a red herring argument that "petitioners are abusing the FCC rulemaking process." (*See supra.*) And continue, in the next breath, to offer the FCC's response to the court's request in *Heinrichs v. Wells Fargo Bank N.A.*, No. 13-05434, Docket No. 58 (N.D. Cal. Sept. 26, 2014) without noting that,

---

[12] Available at http://www.fcc.gov/blog/tcpa-it-time-provide-clarity (emphasis added).

[13] Chairman Tom Wheeler's August 28, 2014 responses to the "Questions for the Record" at 2-3 *available at* http://docs.house.gov/meetings/IF/IF16/20140520/102238/HHRG-113-IF16-Wstate-WheelerT-20140520-SD003.pdf (emphasis added).

in that submission, the FCC specifically addressed the issue of <u>consent</u> under the TCPA—not "capacity"[14]—and that the FCC was explaining whether it would have an answer to the consent issue contained in two petitions in the following month. *Id.* ("Although substantial progress has been made, in response to the Court's specific question, Commission counsel does not anticipate that the agency will issue a final decision on either of the pending petitions <u>by the middle of October 2014</u>. Nor is Commission counsel in a position to predict when the Commission will vote to approve a final order on this matter.") (emphasis added).

It is notable that, in contrast to Plaintiffs' contentions, other courts have recently entered stays under the primary jurisdiction doctrine pending a decision by the FCC on the issue of "capacity" under the TCPA.[15] It is likewise notable that Plaintiffs have not asserted any factual basis for a claim of prejudice other than the initial filing dates of the member cases. Furthermore, the *Dominguez v. Yahoo!, Inc.* decision in which the court granted summary judgment in favor of Defendant Yahoo because the plaintiff failed to establish that Yahoo's system "had the capacity to randomly or sequentially generate telephone numbers (as opposed to simply storing telephone numbers), as required by the statutory definition of ATDS"[16] remains pending on Plaintiff's appeal to the Third Circuit Court of Appeals.[17]

---

[14] *Heinrichs*, No. 13-05434, Docket No. 58, at 1-2.

[15] *See, e.g., Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-00201-KD-N, 2014 U.S. Dist. LEXIS 131587, at *4-5 (S.D. Ala. Sept. 19, 2014) (entering stay and noting "answers to both . . . questions [of interpretation of the terms "capacity" and "called party"] are needed to resolve issues in this case"); *Wahl v. Stellar Recovery, Inc.*, No. 14-cv-6002-FPG, 2014 U.S. Dist. LEXIS 132200, at *6-7 (W.D.N.Y. Sept. 18, 2014) (granting stay and noting "the FCC's apparent willingness to offer guidance to the communications industry, Congress, and consumers seems to be a signal that resolution of some, or all, of the issues covered in the pending petitions, may soon be forthcoming"); *Lee v. LoanDepot.com, LLC*, No. 14-1084-MLB, 2014 U.S. Dist. LEXIS 115749, at *4-5 (D. Kan. Aug. 20, 2014) (ordering stay and noting that "allowing the FCC to decide this issue will help to ensure uniformity in the future decisions of this court" and "that the FCC's declaratory ruling on the issue of capacity will aid resolution of this case").

[16] *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 644 (E.D. Pa. 2014).

[17] *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 *appeal docketed* (E.D. Pa. 2014); *see also* Brief for Twitter, Inc. et al. as Amici Curiae Supporting Appellees,

1        Accordingly, Defendants request that the Court continue its stay of this

2   proceeding and Order the parties to notify the Court (1) within five days after the

3   FCC issues a resolution of these issues; or (2) May 19, 2015, whichever occurs

4   first, at which time the parties can state their respective positions on whether the

5   current stay should be extended.

6

   Dated: November 19, 2013     By:  s/Ethan Preston

7                                       James O. Latturner, Esq.
                                    EDELMAN, COMBS, LATTURNER &

8                                       GOODWIN, LLC
                                    20 South Clark Street, Suite 1500

9                                       Chicago, Illinois 60603
                                    (312) 739-4200 (telephone)

10                                      (312) 419-0379 (facsimile)
                                    dedelman@edcombs.com

11                                      ccombs@edcombs.com
                                    jlatturner@edcombs.com

12                                      cmiller@edcombs.com

13                                      Ethan Preston, Esq. (263295)
                                    PRESTON LAW OFFICES

14                                      8245 North 85th Way
                                    Scottsdale, Arizona 85258

15                                      (480) 269-9540 (telephone)
                                    (866) 509-1197 (facsimile)

16                                      ep@eplaw.us

17                                      Douglas J. Campion, Esq. (75381)
                                    LAW OFFICES OF DOUGLAS J.

18                                      CAMPION, APC
                                    409 Camino Del Rio South, Suite 303

19                                      San Diego, California 92108
                                    (619) 299-2091 (telephone)

20                                      (619) 858-0034 (facsimile)
                                    doug@djcampion.com

21

22                                      *Co-Lead Counsel and Liaison Counsel for Plaintiffs*

23

   Dated: November 19, 2013     By:  s/Jennifer M. Robbins (*by consent*)

24                                      Christopher W. Madel (MN No. 230297)
                                    Jennifer M. Robbins (MN No. 387745)

25                                      ROBINS, KAPLAN, MILLER & CIRESI
                                    L.L.P.

26                                      800 LaSalle Avenue

27  *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014 ) (No. 13-1887)

28  (2014 U.S. Dist. LEXIS 36542 ) (discussing the issue of "capacity" under the
TCPA and the United States' position in *De Los Santos*).

2800 LaSalle Plaza
Minneapolis, Minnesota 55402-2015
(612) 349-8500 (telephone)
(612) 339-4181 (facsimile)
cwmadel@rkmc.com
jmrobbins@rkmc.com

Edward D. Lodgen (155168)
Julia V. Lee (252417)
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, California 90067-3208
(310) 552-0130 (telephone)
(310) 229-5800 (facsimile)
edlodgen@rkmc.com

*Attorneys for Defendants Portfolio Recovery
Associates, LLC and PRA Group, Inc. (f/k/a
Portfolio Recovery Associates, Inc.) and
Neal Stern*