James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
info@edcombs.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR

## THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 11-md-02295-JAH-BGS<br><br>Member cases:<br>   All member cases<br><br>Hon. John A. Houston<br>Hon. Bernard G. Skomal<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS CERTIFICATION**<br><br>Date:     June 6, 2016<br>Time:    2:30 p.m.<br>Location: Courtroom 13B<br>         333 West Broadway<br>         San Diego, California 92101 |

**NOTICE OF MOTION FOR PRELIMINARY APPROVAL**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT on June 6, 2016 (or on any other date the Court may set) at 2:30 p.m., in Courtroom 13B of the James M. Carter and Judith N. Keep United States Courthouse at 333 West Broadway, San Diego, California 92101, before the Honorable Judge John A. Houston, Plaintiffs Jeremy Frydman, John Howard, Sam Marin, Jesse Meyer, Frederick L. Jury, and Danny Allen  (collectively, "Plaintiffs") will and hereby does move for preliminary approval ("Motion") of the class action settlement (the "Agreement") under Rule 23(c) and 23(e) of the Federal Rules of Civil Procedure with Defendants Portfolio Recovery Associates, LLC and PRA Group, Inc. (collectively, "Defendants"). Defendants do not oppose the Motion. The Motion seeks entry of the Preliminary Approval Order which: (1) certifies a Class, appoints Plaintiffs as the representatives of the Class and appoints Class Counsel; (2) preliminarily approves the Agreement as fair, reasonable, and adequate; (4) approves and directs the parties to provide notice and receive claims from Class Members, consistent with the Agreement; (5) sets deadlines for Class Members to opt out and object, for Plaintiffs and their counsel to file their application for attorneys' fees, costs, and service awards, and for the parties to file for final approval of the settlement; and (6) schedules a final approval hearing.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declarations (which include, e.g., the Agreement, the proposed Preliminary Approval Order, and notice), the oral argument of counsel, and any other matter that may be submitted at the hearing. Further, this Motion is made on the grounds that the Agreement is the product of arm's-length, good-faith negotiations; is fair, reasonable, and adequate to the Class, and should be preliminarily approved, as discussed in the attached memorandum.

Dated: April 25, 2015    By: _____ s/Ethan Preston _____
                                Ethan Preston (263295)
                                PRESTON LAW OFFICES
                                4054 McKinney Avenue, Suite 310
                                Dallas, Texas 75204
                                (972) 564-8340 (telephone)
                                (866) 509-1197 (facsimile)
                                ep@eplaw.us


Dated: April 25, 2015    By: _____ s/James O. Latturner _____
                                James O. Latturner
                                EDELMAN COMBS LATTURNER &,
                                GOODWIN, LLC
                                20 South Clark Street, Suite 1500
                                Chicago, Illinois 60603
                                info@edcombs.com
                                (312) 739-4200 (telephone)
                                (312) 419-0379 (facsimile)
                                @edcombs.com

                                *Attorneys for Plaintiffs and the Proposed Class*

James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
info@edcombs.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR

## THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 11-md-02295-JAH-BGS<br><br>Member cases:<br>  All member cases<br><br>Hon. John A. Houston<br>Hon. Bernard G. Skomal<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS CERTIFICATION**<br><br>Date:    June 6, 2016<br>Time:    2:30 p.m.<br>Location: Courtroom 13B<br>          333 West Broadway<br>          San Diego, California 92101 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   THE LITIGATION .................................................................................... 2

III.  THE SETTLEMENT .................................................................................. 4

      A.   The Settlement Class ................................................................... 4

      B.   Settlement Benefits ...................................................................... 4

      C.   Notice ............................................................................................ 5

      D.   The Claims Process ...................................................................... 6

      E.   Opportunity to Opt Out and Object ........................................... 6

      F.   Scope of Release ........................................................................... 6

      G.   Attorneys' Fees And Litigation Expenses ................................ 7

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE
      AGREEMENT BECAUSE IT IS A FAIR, REASONABLE, AND
      ADEQUATE SETTLEMENT ................................................................... 7

      A.   The Agreement Has a Cash Value of $18 Million and Provides
           a Fair and Substantial Benefit to the Class ............................... 9

      B.   Liability Is Highly Contested and Both Sides Face Significant
           Challenges in Litigating this Case ............................................ 12

      C.   The Settlement Benefits the Class Because Defendants Are
           Accepting Class Members' Representations About Consent and
           Thereby Tacitly Waiving Any Defense Based On Consent As
           To Settlement Class Members .................................................... 12

      D.   The Settlement Provides Relief to Settlement Class Members
           for Whom Individual Suits Would Not Be Economical ............ 13

      E.   The Agreement Was Reached Through Arms'-Length
           Negotiation with the Court's Extensive Assistance ................. 14

      F.   Experienced Counsel Have Determined That the Settlement Is
           Appropriate and Fair to the Class ............................................ 15

      G.   The Proposed Plain For Giving Notice to the Class Is
           Appropriate ................................................................................ 15

           1.   The Content of the Notice Is Adequate ........................... 16

           2.   The Notice Will Reach Enough Class Members to
                Conform With Due Process ............................................... 16

      H.   The Court Should Appoint Co-Lead Counsel As Class Counsel
           and Plaintiffs As the Class Representatives ............................. 17

I.    The Court Should Appoint KCC as the Settlement
      Administrator ...................................................................... 18

J.    A Final Approval Hearing Should Be Scheduled .............................. 18

IV.   THE COURT SHOULD CERTIFY THE CLASS ON A
      PRELIMINARY BASIS ........................................................... 19

A.    The Settlement Class Meets the Requirements of Rule 23(a) ........... 19

B.    The Class Meets the Requirements of Rule 23(b)(3) ...................... 23

V.    CONCLUSION ....................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**
Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008)................................8
Acosta v. Trans Union, LLC, 243 F.R.D. 377 (C.D. Cal. 2007))...........................7
Armstrong v. Board of School Directors of City of Milwaukee, 616 F.2d 305 (7th
  Cir. 1980)..........................................................................................................7
Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).............................13, 19, 24
Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) ..............................................22
Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975)................................................22
Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp., 249 F.R.D. 334
  (N.D. Cal. 2008) ........................................................................................18, 23
Cf. Lane v. Facebook, Inc., 696 F.3d 811 (9th Cir. 2012) ....................................9
Cf. Couser v. Comenity Bank, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ...............10
Cf. Kristensen v. Credit Payment Servs., 12 F. Supp. 3d 1292 (D. Nev. 2014).....21
Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566 (9th Cir. 2004) .......................16
Couser v. Apria Healthcare, Inc., 13-cv-00035, ECF No. 45, p. 9 (C.D. Cal. Oct.
  27, 2014) .........................................................................................................10
Cummings v. Connell, 316 F.3d 886 (9th Cir. 2003).............................................22
Frydman v. Portfolio Recovery Associates, LLC, No. 11-cv-00524 (N.D. Ill. ECF
  No. 63.) ..............................................................................................................2
Gascho v. Global Fitness Holdings, LLC, 2014 WL 1350509, *6-7, 29 (S.D. Ohio
  Apr. 4, 2014) ...................................................................................................17
General Tel. Co. of Sw. v. Falcon, 457 U.S. 147 (1982)......................................22
Gutierrez v. Barclays Group, No. 10-cv-01012 (S.D. Cal. March 12, 2012) ........10
Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) ..................passim
Hartless v. Clorox Co., 273 F.R.D. 630 (S.D. Cal. 2011) ...................................17
Hesse v. Sprint Corp., 598 F.3d 581(9th Cir. 2010)..............................................7
Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258 (S.D. Cal. 1988) ...................20
In re Enhanced Recovery Co., No. 13-md-2398 (M.D. Fla. July 29, 2014)...........11
In re Flonase Antitrust Litig., 291 F.R.D. 93 (E.D. Pa. 2013) ............................17
In re Folding Carton Antitrust Litig., 75 F.R.D. 727 (N.D. Ill. 1977) .................14
In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436 (E.D. Pa. 2000).....11
In re Ins. Brokerage Antitrust Litig., 297 F.R.D. 136 (D.N.J. 2013) ...................17
In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y. 1993)...............................11
In re Mut. Funds Inv. Litig., 2011 WL 1102999, *1-2 (D. Md. Mar. 23, 2011) ...17
In re National Western Life Ins. Deferred Annuities Litig., 268 F.R.D. 652 (S.D.
  Cal. 2010)........................................................................................................20
In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008).......11
In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078 (N.D. Cal. 2007). ...........8
In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act
  (FACTA) Litig., 295 F.R.D. 438 (C.D. Cal. 2014)........................................12
In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953 (9th Cir. 2009).
  ..........................................................................................................................21
In re Wireless Facilities, Inc. Sec. Litig. II, 253 F.R.D. 607 (S.D. Cal. 2008) .......15
Kirkorian v. Borelli, 695 F. Supp. 446 (N.D. Cal. 1988)......................................15
Lake v. First Nationwide Bank, 156 F.R.D. 615 (E.D. Pa 1994)..........................14
Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507 (9th Cir. 1978) ..............17
Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998) ....................9, 11
Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
  Inc., 244 F.3d 1152 (9th Cir. 2001).................................................................21
Malta v. Fed. Home Mortg. Corp., 2013 WL 444619, *11 (S.D. Cal. Feb. 5, 2013)
  ..........................................................................................................................17
Marlo v. United Parcel Serv. Inc., 251 F.R.D. 476 (C.D. Cal. 2008) ..................19
McPhail v. First Command Fin. Planning, Inc., 247 F.R.D. 598 (S.D. Cal. 2007) 22

Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338 (9th Cir. 1980).................16
Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036 (9th Cir. 2012)..1, 3, 4, 21
Milliron v. T-Mobile USA, Inc., 2009 WL 3345762, *4 (D.N.J. Sept. 10, 2009)..17
Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003) ..............................................22
National Rural Tele. Coop. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004) 11
Norris-Wilson v. Delta-T Group, Inc., 270 F.R.D. 596 (S.D. Cal. 2010)..............20
Officers for Justice v. Civil Service Comm'n, 688 F.2d 615 (9th Cir. 1982). 8, 9, 11
Patel v. Trans Union, LLC, 308 F.R.D. 292 (N.D. Cal. 2015) ......................18, 23
Pepper v. Midland Credit Mgmt., Inc., No. 37-2011-00088752-CU-BT-CTL (Cal. Superior Ct., San Diego, Sept. 9, 2013) ..............................................11
Perez v. Asuiron Corp., 501 F. Supp. 2d 1360 (S.D. Fla. 2007)............................17
Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ....................................17
Rose v. Bank of Am. Corp., No. 11-02390, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014)..............................................................................11
Rubio-Delgado v. Aerotek, Inc., No. 13-03105, 2015 WL 3623627, *9 (N.D. Cal. June 10, 2015)........................................................................11, 23
Silber v. Mabon, 18 F.3d 1449 (9th Cir. 1994) ..............................................16
Spann v. J.C. Penney Corp., No. 12-0215, 2016 WL 297399, *15 (C.D. Cal. Jan. 25, 2016) ..............................................................................16
Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003) ........................................19
Utility Reform Project v. Bonneville Power Admin., 869 F. 2d 437 (9th Cir. 1989) ..9
Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996) .....................24
Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) ............................20, 21
West Va. v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971)............................8
Xiufang Situ v. Leavitt, 240 F.R.D. 551 (N.D. Cal. 2007) ..............................21
Ybarrondo v. NCO Fin. Systems, Inc., No. 05-cv-02057 (S.D. Cal. Oct. 8, 2009)11

**Statutes**
18 U.S.C. § 2710..............................................................................10
47 U.S.C. § 227(a)(1) ..........................................................................21
Cal. Pen. Code § 632Acosta ....................................................................11
Telephone Consumer Protection Act, 47 U.S.C. § 227...............................2, 5, 11

**Other Authorities**
4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11:53 (4th ed. 2013) ..............................................................................16
4 Herbert B. Newberg, Newberg on Class Actions § 11.25 et seq., and § 13.64 (4th ed. 2002 and Supp. 2004) ..............................................................8
5 James Wm. Moore, Moore's Federal Practice – Civil § 23.165[3] (3d ed.)..........8
Federal Judiciary Center, Manual for Complex Litigation §§ 21.632, 21.633, 21.634 (4th ed. 2004) ("MCL")..............................................passim
S. Rep. No. 102-178, at 6 (1991)..............................................................12

**Rules**
Fed. R. Civ. P. 23(a) ..........................................................................19
Fed. R. Civ. P. 23(a)(1) ......................................................................20
Fed. R. Civ. P. 23(a)(2) ......................................................................20
Fed. R. Civ. P. 24(a)(4) ......................................................................23
Fed. R. Civ. P. 23(b)(2).........................................................................3
Fed. R. Civ. P. 23(b)(3).....................................................................2, 23
Fed. R. Civ. P. 23(c)..........................................................................1, 19
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................15
Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ..........................................................16
Fed. R. Civ. P. 23(g)..........................................................................23

Fed. R. Civ. P. 23(e) .......................................................................................1,7, 15

# I.   INTRODUCTION

Pursuant to Rule 23(c) and Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Jeremy Frydman, ("Frydman"), John Howard ("Howard"), Sam Marin ("Marin"), Jesse Meyer ("Meyer"), Fredrick L. Jury ("Jury"), and Danny Allen ("Allen") (collectively "Plaintiffs"), move  for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by Defendants Portfolio Recovery Associates, LLC ("PRA") and PRA Group, Inc. (collectively referred to as "Defendants").[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (hereinafter, the "Agreement") attached as Exhibit A to the Declaration of Jim Latturner in Support of Preliminary Approval ("Latturner Decl.").[2]

The Settlement consists of the following:

1.   Defendants will pay $18,000,000. Settlement Class members will receive a pro rata share of the balance of that amount after payment of notice and administration costs not to exceed $3,325,000, attorney's fees not to exceed $5.4 million, litigation costs, and incentive awards for each Plaintiff not to exceed $6,250 each.

2.   The injunctive relief affirmed in *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) will be continued and expanded. In sum, the injunction will prohibit PRA from using its Avaya Proactive Contact Dialer to place calls to any person's cellular telephone numbers without prior express consent.

The parties negotiated the Settlement over a period of years with the assistance of Magistrate Judge Bernard Skomal. While each of the Parties respectively believe they would have prevailed on the merits had the case not settled, they each have concluded that settlement was preferable to the uncertainty and risk attendant with litigating the case further.

Accordingly, Plaintiffs move for an order preliminarily approving the proposed Settlement as fair, adequate and reasonable, and provisionally certifying

---

[1] Plaintiffs and Defendants are referred to collectively as "the Parties."
[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes. Plaintiffs also seek (1) appointment of Plaintiffs' Interim Co-Lead Counsel (James O. Latturner and Ethan Preston) and Interim Liaison Counsel (Douglas O. Campion) as representatives of the Class for the purposes of obtaining preliminary and final approval of the Agreement, and final judgment on the Class Members' claims by way of the Agreement and Consent Decree, (2) approval of the notice program (with a ruling that it constitutes the best notice practicable under the circumstances, and satisfies due process, Rule 23, and other applicable law), (3) and an Order setting the date and time for the Final Approval Hearing, and setting Claims, Objection and Opt-Out deadlines.

## II.    THE LITIGATION

Defendants were involved or engaged in the business of purchasing debts allegedly owed by consumers, and attempting to collect those debts. Plaintiffs have alleged that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by calling cellular telephones without prior express consent, using an "automatic telephone dialing system" and that Plaintiffs and the Class Members are entitled to statutory damages for those violations.

On December 23, 2010, Allen filed an action against Defendants in this Court. On January 3, 2011, Jesse Meyer filed an action against Defendants in the Superior Court for the State of California for the County of San Diego. On January 24, 2011 and January 31, 2011 respectively, Frydman and Marin filed actions against Defendants in the Northern District of Illinois.[3] Every complaint in the foregoing actions alleged that Defendants violated the TCPA.

On September 14, 2011, this Court entered a preliminary injunction against PRA's continued use of certain dialing equipment to call to cellular telephones

---

[3]    Prior to their case being transferred to this Court, Frydman and Marin engaged in discovery and motion practice relating to discovery, prompting PRA to produce class-wide discovery in their case. On June 28, 2011, PRA's motion to dismiss and stay was denied. *See Frydman v. Portfolio Recovery Associates, LLC*, No. 11-cv-00524 (N.D. Ill. ECF No. 63.)

with a California area code, and certified a class under Rule 23(b)(2). On October 12, 2012, the United States Court of Appeals for the Ninth Circuit affirmed the injunction and class certification. *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013).[4]

On December 21, 2011, Plaintiffs' actions were transferred to this Court for consolidated pretrial proceedings. (ECF No. 32.) On April 10, 2012 the Court appointed Interim Co-Lead Counsel and Liaison Counsel. (ECF No. 17.) On June 22, 2012, Plaintiffs filed a Consolidated Complaint (adding Howard and Jury). (ECF No. 36.) On July 20, 2012, Defendants filed a Motion to Dismiss. (ECF No. 43.) On October 2, 2012, after significant litigation, Defendants withdrew the Motion. (ECF No. 58.) On November 14, 2012, Plaintiffs filed a First Amended Consolidated Complaint. (ECF No. 67.) On November 28, 2012, Defendants filed a Motion to Dismiss portions of Plaintiffs' First Amended Consolidated Complaint. (ECF No. 71.) On January 9, 2014, the Court denied PRA's Motion. (ECF No. 120.)

Beginning in March 2013, Plaintiffs and PRA began to participate in negotiations for a class settlement wherein the parties spent substantial time and resources ensuring that they had the discovery needed, including expert discovery, to negotiate a class settlement. (ECF Nos. 84, 97, 98, 99, 102, 103, 105, 106, 109, 113, 114, 116, 118, 122, 127, 134, 139.) The settlement negotiations ultimately culminated in two in-person settlement conferences with Magistrate Judge Bernard Skomal on March 19, 2014 and November 4, 2015, (ECF Nos. 127, 317) and a telephonic settlement conference on December 9, 2015. (ECF No. 134.) These settlement conferences ultimately led to the parties agreeing to settle the class claims alleged in the Plaintiffs' First Amended Consolidated Complaint. (ECF No. 331.)

---

[4] Meyer also undertook extensive class discovery needed to support the Court's September 14, 2011 ruling.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The Agreement settles the claims of a Class of persons defined as follows:

> All natural persons residing in the United States who received one or more telephone calls from an autodialer or a predictive dialer operated by Defendants to such person's cellular telephone number between December 23, 2006 and July 1, 2013, inclusive, and who are listed in the csv data file titled pra_outbound_dial_list_20140304.zip produced to Plaintiffs' counsel.

(Agreement, § 2.6.) During settlement negotiations, PRA produced to Plaintiffs a data file titled "pra_outbound_dial_list_20140304.zip" which identified approximately 7.4 million Class Members as meeting the definition above.

### B.   Settlement Benefits

Under the Settlement, Defendants will establish an $18 million settlement fund. (Agreement, § 6.1.) In addition, the injunctive relief affirmed in *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) will be continued and expanded. The consent decree entered into with this settlement provides an injunction that prohibits PRA from using its Avaya Proactive Contact Dialer to place calls to any person's cellular telephone numbers without prior express consent. (Agreement, § 6.4.)

The settlement fund will pay for administration expenses, attorneys' fees and litigation costs, and incentive awards to the Plaintiffs. (Agreement, § 6.3(a)-(c).) Class Members will receive an opportunity to opt-out of the Class. Those that do not ("Settlement Class Members") are eligible to claim and receive a *pro rata* share of the remaining common fund; the recovery for each Settlement Class Member who submits a valid claim will depend on the total number of valid claims. There is no minimum or maximum amount that any Settlement Class Member is entitled to receive. (Agreement, § 5.02.) In addition to payments to Settlement Class Members, the Settlement Fund will pay incentive payments to each of the six Plaintiffs (up to $6,250 each). Any portion of the Settlement Fund from uncashed checks will be subject to a second distribution to persons who

cashed their checks, provided that each class member would receive at least five dollars. (Agreement, § 6.3(b).) After the last check becomes invalid, the Settlement Administrator shall pay any remaining funds to the Cy Pres Recipient. (Agreement, § 6.2(f).) The Parties propose any *cy pres* relief be paid to the National Association of Consumer Advocates, in particular for its work with the Federal Communications Commission to ensure that consumers' rights are maintained under the TCPA. No funds shall revert to Defendants. (Agreement, § 6.2(d).)

### C.   Notice

As detailed in the Agreement, the Settlement Administrator has prepared notice plan which includes Notice directly mailed to Class Members, a website dedicated to the settlement, a long-form notice available through the website, a toll-free number to call to obtain more information about the Agreement, and publication of Notice in People magazine and through significant Internet advertising venues, strategically placed to maximize the dissemination of the Notice. (*See* Agreement, § 4.3. *See also* Exs. 3, 4, and 5 to Latturner Decl.; Exhibit 1 to Declaration of Daniel Burke ("Burke Decl.").) The Settlement Administrator has designed the Notice plan to ensure that the combined Notice (direct mailing and publication) will reach at least 70 percent of all Class Members, consistent with the Federal Judiciary Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide—indeed, the plan should reach 92.3 percent of all Class Members. (*Cf.* Burke Decl. ¶28 *with* Agreement, § 4.3(d).)

The Settlement Administrator will mail Notice as soon as it identifies and updates Class Members' mailing addresses and the website containing Notice is accessible, and will finish mailing Notice no later than forty-five (45) days after the date of entry of the Preliminary Approval Order (or such time as reasonably necessary to complete the notice process and update the notice database). (*See* Agreement, § 4.3(a)-(c).) The Settlement Administrator will mail Notice in post card format to each Class Member at his or her last known valid address (after

updating and corrected the addresses). (*See* Agreement, § 4.3(c).) If any Notice is returned with a new address, the Settlement Administrator will re-mail the notice to the new address and shall update the Class Member address list with all forwarding addresses. (*Id*.) In addition to the People publication, the Notice plan anticipates delivery of over 10 million impressions over a one-month period. (Ex.1 to Burke Decl.)

### D.    The Claims Process

The Agreement provides Settlement Class Members 40 days before the Final Approval Hearing to submit claims—that is, 65 days from when direct Notice is initially mailed to the Class. (Agreement, § 4.4(a).) A claim can be submitted by calling a toll-free number, submitting a claim online at the settlement website, or by downloading, completing, and mailing a completed claim from the settlement website. (Agreement, § 4.4(a).) Settlement Class Members can submit only one claim regardless of the number of accounts they may have or regardless of the number of times they were called by Defendants. (Agreement, § 4.4(c).)

### E.    Opportunity to Opt Out and Object

Settlement Class members have the right to opt out of the Settlement Class or to object to the terms of the Settlement. (Agreement, §§ 4.6, 4.7.) Timely and valid requests for exclusion must be mailed to the Settlement Administrator with a postmark date no fewer than 30 days before the Final Approval Hearing. (Agreement, § 4.6.) Timely and valid objections must be filed with the Court no later than 30 days prior to the Final Hearing and sent to Class Counsel and Defendant' counsel. (Agreement § 4.7.)

### F.    Scope of Release

Settlement Class Members (those who do not opt-out of the Settlement) release claims related to calls using an "automatic telephone dialing system" as defined by the TCPA (or similar laws), between December 23, 2006 and April 22, 2016. (*See* Agreement § 9.1. *See also* Agreement § 2.25 (defining "Released

Claims").) Because it is limited to the facts alleged by Plaintiffs' claims, this is an appropriate release. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("settlement agreement may preclude a party from bringing a related claim in the future . . . but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action"; citation, punctuation omitted).

### G.     Attorneys' Fees And Litigation Expenses

The Agreement contemplates Class Counsel filing a motion for an attorneys' fee award and an award of litigation expenses from the settlement fund. (Agreement, § 9.1.) Under the Agreement, Defendants have agreed not to oppose this motion. (*Id*.)

### IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE AGREEMENT BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE SETTLEMENT

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Rule 23 prescribes defined procedures and criteria for settlement approval in class action settlements, including preliminary approval, dissemination of notice to class members, and a fairness hearing. Federal Judiciary Center, Manual for Complex Litigation §§ 21.632, 21.633, 21.634 (4th ed. 2004) ("MCL").

> [R]eview of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." [A preliminary approval] hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (cited by, e.g., *Durham v. Continental Central Credit, Inc.*, No. 07-1763, 2011 WL 90253, *2 (S.D. Cal. Jan. 10, 2011); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)).

Hence, the purpose of the Court's preliminary evaluation of a settlement is

to determine whether it is within the "range of reasonableness," and whether disseminating notice to the class and scheduling a formal fairness hearing is merited. *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 et seq., and § 13.64 (4th ed. 2002 and Supp. 2004). Notice of a proposed class settlement should be sent when the Court finds that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The more relaxed standard of review for preliminary approval applies because some of the factors relevant to final approval "cannot be fully assessed until the court conducts its fairness hearing, [so that] a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation, punctuation omitted).

Preliminary approval does not require the Court to make an in-depth and final determination that a settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the Class. *See* 5 James Wm. Moore, Moore's Federal Practice – Civil § 23.165[3] (3d ed.). Moreover, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong

judicial policy that favors settlements, particularly where complex class action

litigation is concerned," as settlements minimize potentially substantial litigation

expenses for both sides and conserves judicial resources. *Linney v. Cellular Alaska*

*P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation, punctuation omitted). *See*

*also Utility Reform Project v. Bonneville Power Admin.*, 869 F. 2d 437, 443 (9th

Cir. 1989); *Officers for Justice*, 688 F.2d at 625. However, the Court's role in

approving

> what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). Hence,

"[t]he proposed settlement is not to be judged against a hypothetical or speculative

measure of what might have been achieved by the negotiators." *Officers for*

*Justice*, 688 F.2d at 625. Rather, preliminary approval focuses on whether there are

"reservations about the settlement, such as unduly preferential treatment of class

representatives or segments of the class, inadequate compensation or harms to the

classes, the need for subclasses, or excessive compensation for attorneys." MCL, §

21.632. Based on these standards, Plaintiffs respectfully submit that for the reasons

detailed below the Court should preliminarily approve the Agreement as fair,

reasonable and adequate.

### A. The Agreement Has a Cash Value of $18 Million and Provides a Fair and Substantial Benefit to the Class

As set forth above in Section III.B, Defendants will establish an $18 million

common fund to settle the Class Members' claims, pay costs of notice and claims

administration, attorneys' fees and litigation costs and incentive payments to settle

this action. (Agreement, § 6.1.) This is a substantial recovery for this case—as it

would be in most cases. *Cf. Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir.

2012) (approving settlement of 3.6 million-member class claiming $2,500 in

statutory damages per violation of 18 U.S.C. § 2710, "[a] $9.5 million class recovery would be substantial under most circumstances, and we see nothing about this particular settlement that undermines the . . . conclusion that it was substantial in this case").

Of course, Plaintiffs are not in a position to forecast the exact amount of individual *pro rata* payments Class members will receive—Plaintiffs cannot provide that number to the Court until the Final Approval Hearing, after all the claims are filed and evaluated. However, based on historical claims rates for claims in TCPA cases, it is anticipated the claims rate will be between 2% and 5%. Even under conservative assumptions, the *pro rata* relief from the remaining $18 million common fund (after deduction of the maximum fee award of $5.4 million and settlement expenses of $3.325 million) would be over $60 at a 2% claims rate (150,000 claimants) and over $24 at a 5% claims rate (375,000 claimants). Hence, the range of expected recovery is well within the range received in other TCPA cases, as will be provided at Final Approval. Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation.

The common fund available under the Agreement is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate. *Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member). Indeed, TCPA class action settlements may be approved even when they offer credits or other in-kind benefits—let alone the cash benefits of this settlement.[5] Likewise, courts have

---

[5] *See, e.g., Couser v. Apria Healthcare, Inc.*, 13-cv-00035, ECF No. 45, p. 9 (C.D. Cal. Oct. 27, 2014) (preliminary approval of TCPA settlement providing for "a cash payment, forgiveness of debt owed to Apria, and/or a voucher for future account balanced with Apria"), given final approval on March 9, 2015); *Gutierrez v. Barclays Group*, No. 10-cv-01012 (S.D. Cal. March 12, 2012) (final approval of TCPA class action where class members were given an estimated $100 credit on their credit card balance with Barclays as part of the

approved TCPA settlements that offered only injunctive relief.[6] With statutory
damages of $500 per violation, and a class of 7.4 million members, Defendants'
potential damages are in the unrealistic of billions of dollars. "Of course, it is
unlikely that a settlement would result in claimants receiving the full [statutory
damages] they might be entitled to under the TCPA." *Rose v. Bank of Am. Corp.*,
No. 11-02390, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014). Such an
expectation flies in the face of the reality that "'the very essence of a settlement is
compromise, a yielding of absolutes and an abandoning of highest hopes.'"
Linney, 151 F.3d at 1242 (quoting *Officers for Justice*, 688 F.2d at 624). Even
where a "proposed settlement is only a small percentage of the total expected
recovery at trial, 'there is no reason, at least in theory, why a satisfactory
settlement could not amount to a hundredth or even a thousandth part of a single
percent of the potential recovery.'" *Rubio-Delgado v. Aerotek, Inc.*, No. 13-03105,
2015 WL 3623627, *9 (N.D. Cal. June 10, 2015) (quoting *In re Ionosphere Clubs,
Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993)).[7] Where "both sides faced this type of
all-or-nothing prospect" from continued litigation, and "the amount at stake was so

---

settlement); *Pepper v. Midland Credit Mgmt., Inc.*, No. 37-2011-00088752-CU-BT-CTL (Cal. Superior Ct., San Diego, Sept. 9, 2013) (final approval of call recording settlement (Cal. Pen. Code § 632) where each class member was to be given up to $1,000 in debt relief); *Ybarrondo v. NCO Fin. Systems, Inc.*, No. 05-cv-02057 (S.D. Cal. Oct. 8, 2009) (final approval of FDCPA class settlement that provided for, in part, a waiver of consumer debt with a face value of $5.8 million).

[6] *See In re Enhanced Recovery Co.*, No. 13-md-2398 (M.D. Fla. July 29, 2014) at ECF No. 123, p. 1 (only injunctive relief for class) and ECF No. 124 (settlement granted final approval); *Grant v Capital Mgmt. Servs., LP*, 2014 WL 888665, *2, *8-9 (S.D. Ca. 2014) (finally approving class settlement under TCPA providing only injunctive relief).

[7] *See also National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

---

large, this factor supports approval of the settlement." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 452 (C.D. Cal. 2014).

And of course the Agreement also provides for significant injunctive relief in the form of a consent decree. The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. *See* S. Rep. No. 102-178, at 6 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1973. Plaintiffs have obtained injunctive relief that protects Class Members and others' privacy on prospective basis.

**B.     Liability Is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case**

Although both Plaintiffs and Defendants strongly believe in the merits of their respective positions, they are also acutely aware of the uncertainties and risks associated with complex class action litigation generally and this case in particular. Plaintiffs and Class Counsel have carefully balanced the risks of continued protracted and contentious litigation, and potentially adverse rulings on class certification and the merits, against the benefits to the Class of the Settlement including the significant Settlement Fund. (Latturner Decl. ¶ 10; Declaration of Ethan Preston in Support of Preliminary Approval ("Preston Decl.") ¶ 26.) Similarly, Defendants recognize that if Plaintiffs succeed in both certifying a class and winning on the merits, the potential damages could be substantially higher than the Settlement agreed upon here. Because of the costs and risks to both sides, the Settlement presents a fair and reasonable alternative to continued litigation. (Agreement, Recitals ¶ 3.)

**C.     The Settlement Benefits the Class Because Defendants Are Accepting Class Members' Representations About Consent and Thereby Tacitly Waiving Any Defense Based On Consent As To Settlement Class Members**

Defendants are effectively waiving any defense that could be raised against that a Class Member consented to receive the calls at issue. The contractual terms

for many of the consumer debts Defendants seek to collect include provisions that purport to provide Defendants consent to call the Class Member at any telephone number at which that Class Member may be found. Also, other debts include arbitration provisions that might preclude the inclusion of those Class Members in the Class if the Lawsuit were litigated. Under the Agreement, however, Defendants will effectively waive any such consent-based defenses, eliminating consent as an issue. Settlement Class Members will recover without having to contend any consent defense.

### D.   The Settlement Provides Relief to Settlement Class Members for Whom Individual Suits Would Not Be Economical

The Agreement benefits the majority of Settlement Class Members who did not receive enough calls from Defendants to have claims for statutory damages to make individual lawsuits economically feasible; either attorneys' fees and costs would eat up most of any recovery or no attorney would take the case to begin with. Conversely, Class Members who received a significant number of calls—and have economically viable individual cases—are free to opt out of the Agreement.

The Agreement is the best way to adjudicate the Class Members' burgeoning claims. The vast majority of Class Members are undoubtedly unaware that their rights are being violated and are even less likely to retain counsel (particularly where many of the Class Members are impecunious—Defendants are attempting to collect debts from them after all). The special efficacy of the consumer class action has been noted by courts and is applicable to this case.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation, punctuation omitted).

A class action permits a large group of claimants to have their claims

---

> adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Practically, absent class settlement, many of the Class Members here could never receive anything for their TCPA claims. Although it is surely a compromise, the Agreement nonetheless offers those Class Members compensation.

### E. The Agreement Was Reached Through Arms'-Length Negotiation with the Court's Extensive Assistance

The Agreement is the result of intensive arms-length negotiation, including two in-person settlement conferences and multiple phone calls with Magistrate Judge Bernard Skomal plus extensive negotiations between the Parties on their own as well. (Agreement, § 1 ¶ 10. Latturner Decl., ¶ 4.) Class Counsel conducted extensive informal class discovery and confirmatory discovery as part of preparing for and completing settlement negotiations. (*Cf.* ECF Nos. 84, 97, 98, 99, 102, 203, 105, 106, 109, 110, 113, 114, 116, 118, 122, 127, 134. 139, 249, 266, 282, 283, 284, 308, 310, 317, 331.)

The time and effort spent on settlement negotiations, as well the time spent with Judge Skomal in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no

collusion. *See Hanlon*, 150 F.3d at 1029 (district court properly relied on mediator "as independent confirmation that [portion of settlement] was not the result of collusion or a sacrifice of the interests of the class"); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair").

### F. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class

When deciding whether to give preliminary approval to a settlement, the Court is entitled to give considerable weight to the opinion of counsel. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Here, the Parties are represented by counsel experienced in complex class action litigation. Co-Lead Counsel have extensive experience in class actions and, in particular, experience in class actions relating to consumer protection, including the TCPA. (Latturner Decl., ¶ 2, and Ex. 6; Preston Decl. Ex. 1.) Counsel for Defendants similarly have extensive experience based upon a long track record in complex class actions. They have vigorously defended Defendants throughout this Action. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. (Latturner Decl. ¶¶ 6-10; Preston Decl., ¶ 26.)

### G. The Proposed Plain For Giving Notice to the Class Is Appropriate

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and notice plan. Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23 does not require perfect notice; it requires only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here, which, as summarized above in Section III.C,

includes individual notice mailed directly to Class Members, an internet/website notice, an 800 number, and publication via People magazine and a significant campaign via Internet advertising venues. (*See* Agreement., § 4.3.) Even if the notice program somehow fails to provide absent class members actual notice, that "does not mean that the best practicable notice under the circumstances was not given to absent class members." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (affirming class settlement absent actual notice to class member).

### 1.    The Content of the Notice Is Adequate

The proposed Notice communicates the information required by Rule 23(c)(2)(B)(i)-(vii). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard,'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)), and is "adequate if it may be understood by the average class member," *Spann v. J.C. Penney Corp.*, No. 12-0215, 2016 WL 297399, *15 (C.D. Cal. Jan. 25, 2016) (citing 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11:53 (4th ed. 2013)). The Notice provides enough information about the Agreement for interested Class Members to determine whether it is appropriate to object, and is clear enough to be understood. Each notice document briefly describes the case and the Settlement, informs Class Members of the deadline and requirements for objections and requests for exclusion, and directs Class Members to sources for additional information.

### 2.    The Notice Will Reach Enough Class Members to Conform With Due Process

Notice will be directly mailed to Class Members and it is highly likely the notice will reach the vast majority of Class Members (i.e., ninety percent (90%).) (*Cf.* Agreement, § 4.3 *with* Burke Decl. ¶ 16.) The Settlement Administrator will use a National Change of Address database to identify and update any outdated

addresses in the file named pra_outbound_dial_list_20140304.zip. (*See* Agreement § 4.3(b); Burke Decl. ¶ 15.) Mailed notice is presumptively reasonable, and satisfies due process requirements. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (finding the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"). Moreover, numerous courts have approved mailing summary notice to class members.[8]

As summarized in Section III.C, the Settlement Administrator has designed a notice plan which involves both extensive direct mailing and publication in People and through Internet advertising venues which the Settlement Administrator expects will reach approximately 92.3% of likely Class members, on average 1.2 times each. (*Cf.* Burke Decl. ¶28 *with Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (approving settlement where direct and publication notice were "estimated to reach 75-83 percent of the class").)

## H.   The Court Should Appoint Co-Lead Counsel As Class Counsel and Plaintiffs As the Class Representatives

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

---

[8] *See, e.g., Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approval of settlement with postcard notice sent to majority of class); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (final approval of settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (final approval of settlement with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, *11 (S.D. Cal. Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, *4 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (preliminary approval of settlement with postcard notice for non-current customers and bill stuffers for current customers); *In re Mut. Funds Inv. Litig.*, 2011 WL 1102999, *1-2 (D. Md. Mar. 23, 2011) (finding postcard notices satisfy Rule 23); *Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (final approval of settlement with postcard notice).

The adequacy of representation requirement is met here. The Court has already appointed Edelman, Combs, Latturner & Goodwin, LLC and Preston Law Offices as Interim Co-Lead Counsel. (ECF No. 17.) Plaintiffs now ask the Court to appoint them as lead counsel of the Class for the purposes of preliminary and final approval of the Agreement, and obtaining a final judgment pursuant to the Agreement and the related Consent Decree. Defendants do not object to such appointment. (Agreement, § 3.2(d).) The Court's original appointment reflects that Class Counsel have extensive experience sufficient to be appointed as Class Counsel here. (Latturner Decl., ¶ 2 and Ex. 6; Preston Decl., Ex. 1.) "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (quoted, followed by *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015)). Plaintiffs also seek to have the Law Offices of Douglas J. Campion, APC continue as Liaison Counsel. Finally, Plaintiffs request that the named Plaintiffs, Jeremy Frydman, John Howard, Sam Marin, Jesse Meyer, Frederick Jury, and Danny Allen be appointed as the Settlement Class Representatives.

## I.   The Court Should Appoint KCC as the Settlement Administrator

Plaintiffs have designated KCC as the Settlement Administrator. (*See* Agreement, § 4.2.) KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements, including actions under the TCPA. (Burke Decl., ¶ 4; Ex. 1 to Burke Decl.)

## J.   A Final Approval Hearing Should Be Scheduled

The last step in the settlement approval process is the formal fairness or final approval hearing. Plaintiffs request that the hearing be held not before 150 days after the date of entry of the Preliminary Approval Order; this interval allows sufficient time for Notice and a 65-day claims period.

The following table sets forth the important deadlines proposed in the Settlement Agreement:

| EVENT | SCHEDULED DATE |
|---|---|
| CAFA notice due | Within 10 days of entry of Preliminary Approval motion (Agreement, § 4.5) |
| Deadline for KCC to finish mailing Notice | 45 days after entry of Preliminary Approval Order (Agreement, § 4.3(c)) |
| Deadline to file motions for final approval and fee application | 60 days before Final Approval Hearing (Agreement, § 3.2(f), (g)) |
| Last day to submit a valid claim | 40 days before Final Approval Hearing (i.e., 65 after KCC finishes mailing Notice) (Agreement, §§ 4.4(a)) |
| Last day for Class Members to request exclusion from or object to Settlement | 30 days before Final Approval Hearing (i.e., 75 after KCC finishes mailing Notice) (Agreement, §§ 4.6, 4.7) |
| Final Approval Hearing | At least 150 days after Preliminary Approval Order (Agreement, § 5.1.) |

## IV.   THE COURT SHOULD CERTIFY THE CLASS ON A PRELIMINARY BASIS

Class certification under Rule 23(c) is a prerequisite to preliminary approval of the Agreement. *See* MCL § 21.632 (2004); *Amchem*, 521 U.S. at 620 (Rule 23's provisions are "designed to protect absentees by blocking unwarranted or overbroad class definitions [and] demand undiluted, even heightened, attention in the settlement context"); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("courts must peruse the proposed [settlement] to ratify both the propriety of the certification and the fairness of the settlement"; italics added).

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Plaintiffs' "burden at the class certification stage is slight[;] a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T*

*Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)). Further, the standards applicable to settlement classes are less stringent than those that apply to litigation classes. *Amchem Prods., Inc.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). The proposed Class meets all of Rule 23(a)'s requirements.

**The Class Is Sufficiently Numerous:** The Settlement Class is sufficiently numerous. Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Courts have found joinder impracticable in cases involving as few as forty class members." *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) for proposition that, "[a]s a general rule," a class "of 40 or more" satisfies numerosity). The approximately 7.4 million Class members well exceed these minimal requirements.

**Material Factual and Legal Issues are Common to the Class Members And Are Predominant:** The Class meets the commonality and predominance requirements of Rules 23(a)(2) and 23(b)(3). Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions of law or fact "must be of such a nature [that they are] capable of classwide resolution"; that is, that the answer to such common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted). The commonality element requires that the case be such that a class action will "generate common answers apt to drive the resolution of the litigation." *Id*. (citation, punctuation omitted).

The facts are essentially the same for every member of the Class: they all received one or more calls from Defendants on their cellular telephones from one

of Defendants' dialers. The common questions are whether those dialers constitute "automatic telephone dialing systems" under 47 U.S.C. § 227(a)(1), and whether PRA can produce any evidence of prior express consent by the Class Members. *Cf. Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) "held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer"). These issues are common to all Class Members and their claims largely hinge on these facts. *Cf. Wal-Mart Stores*, 131 S. Ct. at 2551. Hence, these common legal and factual issues are sufficient to establish commonality. Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

Likewise, the material facts and legal issues common to the Class members predominate over individual issues. "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). Predominance is satisfied when "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," *Hanlon*, 150 F.3d at 1022, and "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). The Class meet Rule 23(b)(3)'s predominance requirement.

**Plaintiffs' Claims Are Typical of the Class Members' Claims:** Plaintiffs' claims are typical of the claims of the Class Members under Rule 23(a)(3). Plaintiffs all received one or more calls from Defendants on their cellular telephones, which calls were made using an autodialer without Plaintiffs' prior express consent. Because Plaintiffs share these material common factual and legal issues with the other Class Members, the also satisfy the typicality requirement.

1   "The commonality and typicality requirements of Rule 23(a) tend to merge."

2   *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (cited by, e.g.,

3   *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 611 (S.D. Cal.

4   2007) ("the commonality and typicality inquiries overlap in their focus on the

5   similarities in class claims")); *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir.

6   2001) ("issue presented with respect to typicality is similar to that presented with

7   respect to commonality"). Typicality only requires that absent class members

8   "have injuries similar to those of the named plaintiffs and that the injuries result

9   from the same, injurious course of conduct." *Id.* at 869. Plaintiffs' claims are

10  typical if they are "reasonably co-extensive with those of absent class members;

11  [their claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

12       **Plaintiffs Are Adequate Representatives of the Class:** Rule 23(a)(4)

13  requires that Plaintiffs fairly and adequately protect the interest of the absent Class

14  members. The adequacy test poses two questions: (1) are there conflicts between

15  Plaintiffs or their counsel and the members of Class, and (2) will Plaintiffs and

16  their counsel vigorously prosecute this action? *See Hanlon*, 150 F.3d at 1020. *See*

17  *also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on

18  the qualifications of counsel for the representatives, an absence of antagonism, a

19  sharing of interests between representatives and absentees, and the unlikelihood

20  that the suit is collusive"). No evidence of any potential conflicts exist here:

21  Plaintiffs share the same claims as the Class members, and have an acute interest in

22  obtaining a recovery for themselves and the Class members from Defendants. The

23  Ninth Circuit "does not favor denial of class certification on the basis of

24  speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)

25  (citation omitted). "[C]ourts have generally declined to consider conflicts . . .

26  sufficient to defeat class action status at the outset unless the conflict is apparent,

27  imminent, and on an issue at the very heart of the suit." *Blackie v. Barrack*, 524

28  F.2d 891, 909 (9th Cir. 1975).

**Plaintiffs' Counsel Are Adequate Counsel for the Class:** Rule 23(g) was added in 2003 to require a separate analysis of class counsel adequacy independent of the analysis of class representative adequacy under Rule 24(a)(4). *See* Fed. R. Civ. P. 23(g) advisory committee's note on 2003 amendment. Rule 23(g) provides that the Court must consider counsel's work on the case, experience in handling complex litigation, counsel's knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights*, 249 F.R.D. at 349 (quoted, followed by *Patel*, 308 F.R.D. at 306). Here, Plaintiffs' counsel have diligently and skillfully litigated this case. Plaintiffs' counsel are generally well qualified and experienced in litigating consumer class actions, and specifically have successfully litigated other consumer class actions in the past. (See Latturner Decl. ¶ 2, and Ex. 6; Preston Decl. ¶ 2; Ex. 1 to Preston Decl.) Counsel have advanced the costs of litigation, representing the Class on a contingent fee basis, and have provided adequate representation to the class pursuant to Rule 23(g).

## B.     The Class Meets the Requirements of Rule 23(b)(3)

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under [Rule] 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. *See also* MCL § 21.131. The Class can be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A Class Action is the Superior Dispute Resolution Mechanism:** A class action is a superior mechanism for resolving Plaintiffs' dispute with Defendants. At the outset, assessing superiority under Rule 23(b)(3) "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*,

150 F.3d at 1023. "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Hence, the Court must compare a certified class to "individual claims for a small amount of consequential damages," rather than no litigation whatsoever. *Hanlon*, 150 F.3d at 1023. Over seven million TCPA cases—even if such cases were ever filed—is not a realistic alternative to a class certified for settlement. If millions of individual erstwhile Class Members actually brought their claims, it "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. A class proceeding is superior here because those claims can be resolved through a negotiated settlement on a classwide basis. In a settlement, the Court does not need to consider issues of manageability relating to trial. *Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"; citation omitted).

## V.     CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.

Dated: April 25, 2015     By: _____s/Ethan Preston_____

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

Dated: April 25, 2015     By: _____s/James O. Latturner_____

James O. Latturner
EDELMAN COMBS LATTURNER &,
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603

info@edcombs.com
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
info@edcombs.com

*Attorneys for Plaintiffs and the Proposed Class*