James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
info@edcombs.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR

## THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PORTFOLIO RECOVERY ASSOCIATES, LLC, TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 11-md-02295-JAH-BGS<br><br>Member cases:<br>　All member cases<br><br>Hon. John A. Houston<br>Hon. Bernard G. Skomal<br><br>**PLAINTIFFS' RESPONSE TO BARTLETT AND HARVEY'S OBJECTION TO THE CLASS ACTION SETTLEMENT**<br><br>Date:　　June 13, 2016<br>Time:　　2:30 p.m.<br>Location: Courtroom 13B<br>　　　　　333 West Broadway<br>　　　　　San Diego, California 92101 |

## <u>TABLE OF CONTENTS</u>

I.     The Legal Premise of Objectors' Subclass Theory Is Wrong.........................1

II.    Objectors Are Substantively Wrong About the Settlement Process..............2

III.   Objectors Are Substantively Wrong About the Settlement's Benefits..........5

IV.    The Court Must Consider the Objectors' Motives.......................................10

V.     Class Counsel Do Not Owe Any Duty to Acquiesce to Objectors' (or Other Class Members') Positions on the Settlement ....................................11

V.     Conclusion...................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   No. 06-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)...............................4

*In re Agent Orange Prod. Liab. Litig.*,
   800 F.2d 14 (2d Cir. 1986) ..........................................................................12

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014) ...................................................................4

*In re Brooktree Sec. Litig.*,
   915 F. Supp. 193 (S.D. Cal. 1996) ...............................................................13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2nd Cir.1974) .........................................................................6

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992).......................................................................8

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. 2007) ................................................................5, 6

*In re Corn Derivatives Antitrust Litig.*,
   748 F.2d 157 (3d Cir. 1984) ........................................................................11

*Couser v. Apria Healthcare, Inc.*,
   13-0035 (C.D. Cal. Oct. 27, 2014), ECF No. 45................................................10

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................................9

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008)............................................................13

*Dennis v. Kellogg Co.*,
   No. 09-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ..............................10

*In re Enhanced Recovery Co.*,
  No. 13-2398 (M.D. Fla. July 29, 2014), ECF Nos. 123, 124 ............................ 10

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................................ 11

*In re Google Referrer Header Privacy Litig.*,
  87 F. Supp. 3d 1122, 1130-31 (N.D. Cal. 2015) ............................................... 3, 7

*Grant v Capital Mgmt. Servs., LP*,
  2014 WL 888665 (S.D. Ca. 2014) ...................................................................... 10

*Gutierrez v. Barclays Group*,
  No. 10-01012 (S.D. Cal. March 12, 2012) .......................................................... 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 4

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
  225 F.R.D. 616 (S.D. Cal. 2005) .......................................................................... 9

*In re Infospace, Inc.*,
  330 F. Supp. 2d 1203 (W.D. Wash. 2004) ......................................................... 13

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (S.D.N.Y. 1993) ............................................................................. 7

*Kincade v. Gen. Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981) .............................................................................. 13

*Knutson v. Schwan's Home Serv., Inc.*,
  No. 12-00964 (S.D. Cal. Apr. 1, 2015), ECF No. 151 ......................................... 9

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................ 6, 7

*Lazy Oil Co. v. Witco Corp.*,
  166 F.3d 581 (3d Cir. 1999) .............................................................................. 12

*Lee v. Ocwen Loan Servicing, LLC*
  No. 14-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) .................... 10, 11

*Lemieux v. Global Credit & Collection Corp.*,
No. 08-01012 (S.D. Cal. Mar. 11, 2011), ECF Nos. 41-1 ................................ 10

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................................... 6

*Magee v. Portfolio Recovery Associates, LLC*,
No. 12-01624 (N.D. Ill. May 9, 2016) ECF No. 292 ........................................... 2

*Malta v. The Federal Home Loan Mort. Corp.*,
No. 10-01290 (S.D., Cal. June 21, 2013), ECF Nos. 38-1 ................................... 9

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) ............................................................... 8

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05-0179, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................... 9

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013) ................. 5

*Olden v. LaFarge Corp.*,
472 F. Supp. 2d 922 (E.D. Mich. 2007) ..................................................... 13

*In re Oracle Sec. Litig.*,
136 F.R.D. 639 (N.D. Cal. 1991) ........................................................... 12

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ............................................................. 12

*Protective Comm. v. Anderson*,
390 U.S. 414 (1968) ........................................................................ 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
965 F. Supp. 2d 104 (D.D.C. 2013) ........................................................ 12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................... 3

*Rodriguez v. West Pub. Corp.*,
No. 05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ............................... 13

*Rubio-Delgado v. Aerotek, Inc.*,
  No. 13-03105, 2015 WL 3623627 (N.D. Cal. June 10, 2015) ...........................7

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*,
  No. 10-01777 (S.D. Cal. Feb. 15, 2013), ECF No. 42 .........................................9

*Satchell v. Fed. Express Corp.*,
  No. 03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..............................4

*Shames v. Hertz Corp.*,
  No. 07-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ................................4

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................5, 9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ..............................................................................9

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit*
  *Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................8

*Villegas v. J.P. Morgan Chase & Co.*,
  No. 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...........................4

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  720 F. Supp. 1379 (D. Ariz. 1989). ...................................................................8

*White v. Experian Info. Sols., Inc.*,
  803 F. Supp. 2d 1086 (C.D. Cal. 2011), *rev'd on other grounds*
  *and remanded sub nom. Radcliffe v. Experian Info. Sols. Inc.*, 715
  F.3d 1157 (9th Cir. 2013) ................................................................................12

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) .......................................................................3

**Federal Statutes**

18 U.S.C. § 2710...................................................................................................7

Fair Debt Collection Practices Act .......................................................................2

**Rules**

Fed. R. Civ. P. 23(g) ............................................................................. 13

Fed. R. Civ. P. 23(g)(1) ......................................................................... 13

**Other Authorities**

https://finance.yahoo.com/q?s=praa ......................................................... 8

*In re Portfolio Recovery Associates, LLC Consent Order*,
    No. 2015-CFPB-0023 (C.F.P.B. Sept. 9, 2015) Docket No. 1 ........................... 1

Plaintiffs Jeremy Frydman, John Howard, Sam Marin, Jesse Meyer, Fredrick L. Jury, and Danny Allen (collectively, "Plaintiffs") hereby submit their reply to Kimberly Bartlett and Karen Harvey's Objection (ECF No. 364).

## I.   The Legal Premise of Objectors' Subclass Theory Is Wrong

Objectors' counsel has sought to litigate and settle their Georgia- and Florida-only subclasses since the early days of this multidistrict litigation proceeding. (ECF Nos. 9, 34, 87, 111, 314.) Plaintiffs' and Defendants' respective oppositions (ECF Nos. 315, 339) to the pending *Ex Parte* Consolidated Motion for Designation of Separate Subclassses for the Kimbery Bartlett and Karen Harvey Cases (ECF No. 314) recapitulate the efforts of Objectors' counsel in this regard. In any case, the current Objection does not explicitly spell out why Objectors' subclass theory supposedly moots Defendants' consent and arbitration defenses. That is because it does not.

The statute of limitations on which Objectors rely is an affirmative defense debtors can assert against the collection of debts by Defendants in litigation (or arbitration). There is no authority to support Objectors' assumption that the statute of limitations either (1) terminates any consent Defendants have to call a debtor; or (2) terminates Defendants' ability to compel arbitration of debtors' claims against Defendants that arise from collection of a debt. *Objectors continue their attempt to elide the basic distinction between **Defendants suing consumers** to collect debts and **consumers suing Defendants** for claims under the Telephone Consumer Protection Act ("TCPA").*

This fundamental distinction undermines all the support Objectors seek to muster for their argument. Objectors cite the consent order that the Consumer Financial Protection Bureau issued against Defendants. (Consent Order, *In re Portfolio Recovery Associates, LLC*, No. 2015-CFPB-0023 (C.F.P.B. Sept. 9, 2015) Docket No. 1, *at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associates-llc.pdf.) The consent order restricts Defendants

from suing to collect debts which are past the statute of limitations, either in court or in arbitration. (*Id*. ¶125.) It also prohibits Defendants from making calls to collect such debts *unless* they clearly disclose that they will not sue the debtor to collect such debts. (*Id*. ¶126.) Nothing in the CFPB order prevents Defendants from compelling arbitration of claims against them.

Objectors also cite the opinion in *Magee v. Portfolio Recovery Associates, LLC*. (Memorandum Opinion and Order, *Magee v. Portfolio Recovery Associates, LLC*, No. 12-01624 (N.D. Ill. May 9, 2016) ECF No. 292.) Like the CFPB order, the *Magee* opinion hinged on the fact that some of Defendants' communications could mislead debtors to believe past statute-debts were legally enforceable, and therefore violated the Fair Debt Collection Practices Act ("FDCPA"). The *Magee* opinion does not stand for the proposition that a statute of limitations on a debt terminates either debtors' consent to Defendants' calls or Defendants' right to compel arbitration. *Magee* did not involve any claims under the TCPA at all.

In short, Objectors' Georgia- and Florida-only subclass theory does not fix any of the problems it is purported to fix, or provide any additional relief (indeed, it threatens to take away hard-won injunctive relief). Moreover, as explained below, the parties did negotiate extensively about those defenses, but they simply did not drive the ultimate settlement terms that the parties reached.

## II.   Objectors Are Substantively Wrong About the Settlement Process

The gist of the Objection is that Objectors would have a much stronger negotiating position than Plaintiffs because of Plaintiffs' supposedly deficient class definition. (ECF No. 364 at 2:23-3:11; 5:18-6:24.) This is just not true. Plaintiffs and Defendants heavily litigated this case for a year after consolidation by the Judicial Panel for Multidistrict Litigation. (ECF Nos. 43, 58, 67, 71, 120.) Then Plaintiffs took painstaking informal discovery to support settlement negotiations and tenaciously negotiated for nearly three years with the near-constant involvement and supervision of Judge Skomal—devoting an enormous amount of

time and attention to Defendants' consent and arbitration defenses. (ECF Nos. 84, 97, 98, 99, 102, 103, 105, 106, 109, 113, 114, 116, 118, 122, 127, 134, 139.) These proceedings culminated in two in-person settlement conferences with Judge Skomal on March 19, 2014 and November 4, 2015, as well as a telephonic settlement conference on December 9, 2015. (ECF Nos. 127, 308, 317.) At the end of the November 4, 2015 settlement conference, the parties were still far from settlement, with both vigorously defending their positions regarding liability. Judge Skomal ultimately made a mediator's recommendation to settle the claims of roughly 7.4 million class members for $18 million. The parties finally accepted the recommendation after still more eleventh-hour wrangling, and only truly committed to settlement in the first week of January 2016. (ECF No. 331.)

Based on the extensive and extremely lengthy negotiations above, Class Counsel have concluded they obtained the best terms (not only monetary terms, but also injunctive relief and a limited release) that could have been extracted from Defendants—short of taking the case to trial and then winning an inevitable appeal. "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). But the Court does not have to rely on Class Counsels' conclusion alone.

Judge Skomal spent years managing the parties' sprawling settlement discovery and negotiations. Notwithstanding Objectors' arguments, ***the time and effort Judge Skomal invested in the parties' settlement negotiations create a strong presumption that the Settlement is fair, reasonable, and adequate***. See *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1130-31 (N.D. Cal. 2015) ("court may presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery"; citation, punctuation omitted); *In re Wireless Facilities,*

*Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair").[1] Although Objectors' counsel are certainly fully aware of Judge Skomal's extensive involvement in the settlement negotiations based on, *e.g.*, documents which are publicly available in the Court's docket (*cf.*, *e.g.*, ECF No. 355), they make no effort to rebut such presumption—other than to assert that they could have done much better than Class Counsel. (*See* ECF No. 364 at 2:23-3:11; 5:18-6:24.)

Unlike Judge Skomal, however, Objectors were not present for any of these negotiations. They can merely speculate that Defendants' consent and arbitration defenses drove the negotiations; and that speculation is simply at odds with the real facts. *At Judge Skomal's direction, the Plaintiffs and Defendants identified and negotiated several different settlement "packages" with different class definitions. The class definitions in many (or most) of these packages obviated the consent and arbitration defenses which concern Objectors.* In the end, however, *Defendants* opted for a class definition that did not involve the skip-tracing or the state-based qualifications on which the Objectors' subclass theory hinges; in the end, those defenses simply did not factor into the ultimate Class definition set forth in the

---

[1] *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (district court properly relied on mediator "as independent confirmation that [portion of settlement] was not the result of collusion or a sacrifice of the interests of the class"); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) ("use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"; citation, punctuation omitted); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012) (use of experienced mediator "tends to support the conclusion that the settlement process was not collusive"); *Shames v. Hertz Corp.*, No. 07-2174, 2012 WL 5392159, *7 (S.D. Cal. Nov. 5, 2012) (class counsel "represented the class fairly during settlement negotiations," where they "did not capitulate early in the litigation process and accept a mediocre settlement," but rather "vigilantly advocated for the class throughout this case and during settlement talks, as evidenced in part by six separate day-long mediation sessions" with magistrate judge); *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-5428, 2007 WL 3225466, *3 (N.D. Cal. Oct. 30, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Satchell v. Fed. Express Corp.*, No. 03-2878, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) (same).

Settlement. Objectors offer no reason to believe that their Georgia- and Florida-only subclass would achieve a better result, or *even that Defendants would have agreed to settle such narrowly-defined classes to begin with*. While Plaintiffs have ensured the Class definition was very precisely drawn (indeed, they strenuously negotiated to limit the Class to the data which Defendants provided in settlement discovery) but courts have recognized that it is appropriate to approve even broader settlement classes that afford the defendants peace. *Cf. Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) (where "settling defendants indicated that they would only settle the action if all potential class plaintiffs were included in the settlement class," "settling defendants' desire to attain a full and complete settlement lends further support for certifying a broader settlement class").[2]

## III.   Objectors Are Substantively Wrong About the Settlement's Benefits

Objectors substantively attack the benefits of the Settlement as evidence that Plaintiffs' class definition weakened their negotiating position. At the outset, Objectors cavalierly assert that the Settlement's consent decree "adds nothing" to their subclass theories because both Objectors' complaints "request[ed] Injunctive Relief." (ECF No. 364 at 8:21-23.) Any TCPA plaintiff can seek injunctive relief in a complaint, but there is a vast difference between seeking relief in a complaint and *actually having achieved it through litigation and settlement. Cf. Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013). Objectors ignore that difference; the Court should not.

But the heart of the Objectors' accusation that Plaintiffs had a "weak" negotiating position is that the Settlement's $18 million common fund is too small. The only way Objectors can diminish such a substantial recovery is to compare it

---

[2] *See also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 320 (C.D. Cal. 2016) (noting plaintiff's argument to broaden class certified via litigation in settlement because it would allow defendant "to buy and obtain peace with respect to all [potential plaintiffs]").

with the maximum theoretical recovery Plaintiffs could have attained *after trial*: full statutory damages of $500 for each of the 7.4 million class members would total a judgment of **$3.7 billion**. What percentage of $3.7 billion do Objectors contend would be a reasonable settlement? Ten percent ($370 million)? Five percent ($185 million)? Notably, Objectors contend they could have negotiated a much better settlement than Class Counsel, not that they would have gone to trial.[3] (ECF No. 364 at 2:23-3:11; 5:18-6:24.) Given this position, it is certainly fair to require Objectors to specify the percentage of the total theoretical recovery available that they would have negotiated in settlement—and provide to examples of similar TCPA class settlements where they actually achieved such results.

This inquiry demonstrates that Objectors' analysis is absurd when it is taken to its logical end. That is partly because the initial premise of Objectors' analysis is wrong—courts do not assess class settlements in the manner Objectors propose:

> Appellants offer nothing more than speculation about what damages "might have been" won had they prevailed at trial. This court has aptly held that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." [*Officers for Justice*, 688 F.2d at 625 (emphasis in original).] Thus, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (citations omitted). . . . "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2nd Cir.1974) . . .

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). This same rule applies even in statutory damages cases where the theoretical maximum damages might be calculated readily. In *Lane v. Facebook, Inc.*, 696 F.3d 811, 824

---

[3]   This criticism, considered with Objectors' total lack of exposure to these settlement negotiations, strongly evokes President Roosevelt's famous speech:

> It is not the critic who counts; not the man who points out how the strong man stumbles, or where the doer of deeds could have done them better. The credit belongs to the man who is actually in the arena . . .

Theodore Roosevelt, Former President of the United States, Citizenship in a Republic (April 23, 1910).

(9th Cir. 2012), the Ninth Circuit found a "$9.5 million class recovery would be substantial under most circumstances, and we see nothing about this particular settlement that undermines the . . . conclusion that it was substantial in this case," after holding that the district court which evaluates a class settlement need not "find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Id*. at 823, 824.[4] Ultimately, even where a "proposed settlement is only a small percentage of the total expected recovery at trial, 'there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Rubio-Delgado v. Aerotek, Inc.*, No. 13-03105, 2015 WL 3623627, *9 (N.D. Cal. June 10, 2015) (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993)).

Of course, courts have recognized other practical realities that militate against rejecting a substantial settlement simply because the theoretical maximum recovery at trial would be astronomical. It is no answer that the Class could have prevailed at trial and obtained an annihilatory judgment:

> [S]uccess at trial would not have equated to an ultimate success for the class. This is because . . . any meaningful monetary amount awarded to each class member would have resulted in an astronomical judgment far exceeding the value of Google, given the size of the class. For that reason, the judgment would undoubtedly have been met with a remittitur motion and an appeal.

*In re Google*, 87 F. Supp. 3d at 1131. Here, there is no doubt that appeals would have jeopardized and delayed collecting any judgment in the Class's favor, even if the Class obtained complete victory against Defendants at trial. The concern about the delay and risk of post-trial proceedings has particular force where a judgment for the face value of the Class's claims would result in a figurative fight to the

---

[4] The Settlement here compares favorably to the settlement in *Lane* (where a 3.6 million-member class asserted claims under 18 U.S.C. § 2710 for statutory damages $2,500 per violation—meaning the full measure of statutory damages was $9 billion, but settled for $9.5 million). But of course, *Lane* explicitly rejected this kind of comparison as a valid means of analyzing a class settlement.

death for Defendants. Plaintiffs note PRA Group Inc.'s total market capitalization (i.e., the total market value of its outstanding publicly-traded securities) is currently estimated to be roughly $1.3 billion. *See* Yahoo! Finance, *PRA Group Inc. (PRAA)*, *at* https://finance.yahoo.com/q?s=praa. Defendants spending their last dollar defending the case at trial (and beyond) is a far more realistic scenario than Defendants meekly conceding defeat and mailing their office keys to class counsel. *Cf. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295-96 (9th Cir. 1992) (affirming approval of settlement in *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) where there was "no reason to assume that [state defendant with unlimited funds] would not aggressively attack, and plausibly defeat, efforts to maintain [class action]," and could have spent just as much defending class action as it did on settlement).[5] Thus, where "both sides faced this type of all-or-nothing prospect" from continued litigation, and "the amount at stake [is] so large, [it] supports approval of the settlement." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 452 (C.D. Cal. 2014).

Indeed, this segues to the next point: Defendants are one of the top 5000 publicly-traded companies in the country, but they still do not have the assets to fund even a third of their theoretical liability. The Ninth Circuit has held courts should consider "the defendant's ability to pay a judgment larger than that provided by the proposed settlement" a factor in assessing whether a class settlement is fair and reasonable. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173,

---

[5] The same argument [that the state defendant could pay more] could be made, though it would be less likely, if the instant settlement were for ten times the amount. It sheds no light on the fairness, adequacy or reasonableness of the State's contribution. The Court is not unmindful of the disparity between Class Plaintiffs' losses and the recovery in these settlements. It does not automatically follow, however, given the nature of these claims, that any recovery amounting to less than full reimbursement is unacceptable. Nor is it proper to assume that, because the state is more able to pay, it should therefore pay more. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. at 1416-17.

1178 (9th Cir. 1977) (citing *Protective Comm. v. Anderson*, 390 U.S. 414 (1968)).
Indeed, the defendants' financial condition may be a decisive, even dispositive
factor in assessing a class settlement's fairness and reasonableness. *Cf. Torrisi v.
Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("one factor
predominates to make clear that the district court acted within its discretion
[approving a class settlement.] That factor is [defendant's] financial condition.")
*Cf. McPhail v. First Command Fin. Planning, Inc.*, No. 05-0179, 2009 WL
839841, *4 (S.D. Cal. Mar. 30, 2009) (approving class settlement "given the risks
associated with potential recovery," where "defendants have available assets of
only $30 million to $60 million, which inherently limits the total funds available to
satisfy a judgment" and "maximum recoverable judgment . . . would force
defendants into bankruptcy; further delaying and limiting plaintiffs recovery").[6]

Hence, courts have recognized the practical constraints and economic
realities on TCPA class action settlements. The Settlement now before the Court
sits comfortably within the range of many other settlements approved by this
Court. *Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)
(finally approving settlement where claims rate resulted in *pro rata* payment of
approximately $13.75 per class member). *See also Malta v. The Federal Home
Loan Mort. Corp.*, No. 10-01290 (S.D., Cal. June 21, 2013), ECF Nos. 38-1;
91(court approved TCPA class settlement where each of 120,547 persons who
made claims were to receive $84.82 and settlement resulted in $17.1 million
common fund for benefit of 5,887,506 persons); *Sarabri v. Weltman, Weinberg &
Reis Co., L.P.A.*, No. 10-01777 (S.D. Cal. Feb. 15, 2013), ECF No. 42 (court
approved TCPA class settlement where each claimant received $48.21 after 1.7
percent of the class submitted claims); *Knutson v. Schwan's Home Serv., Inc.*, No.

---

[6]  *See also Spann*, 314 F.R.D. at 327 (defendant's financial condition relevant to class settlement's fairness; citing *Torrisi*); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 624 (S.D. Cal. 2005) ("information concerning Defendants' current financial position is relevant to . . . determination of whether [class] settlement is fair, reasonable and adequate to the class").

1   12-00964 (S.D. Cal. Apr. 1, 2015), ECF No. 151 (court approved TCPA class

2   settlement where each claimant received $20 in cash and a merchandise certificate

3   worth $80); *Lemieux v. Global Credit & Collection Corp.*, No. 08-01012 (S.D. Cal.

4   Mar. 11, 2011), ECF Nos. 41-1; 47 (court approved TCPA class settlement where

5   claimants could receive "up to" $70 where 27,844 class members, settlement fund

6   of $505,000, and 546 timely claims were made). Indeed, TCPA class action

7   settlements may be approved even when they offer credits or other in-kind

8   benefits—let alone the cash benefits of this settlement.[7] Likewise, courts have

9   approved TCPA settlements that offered only injunctive relief.[8]

10          Plaintiffs' opening motion for preliminary approval touched on these same

11  arguments and even cited many of the exact same cases cited above. (*See* ECF No.

12  355 at 9:3-12:3.) Objectors have failed to explain why these settlements were fair

13  and reasonable in those cases, but why this Settlement (with substantially better

14  results) is ostensibly deficient.

## IV.    The Court Must Consider the Objectors' Motives

16          Some explanation can be found in Objectors' persistent desire to pursue and

17  negotiate the separate settlement of their Georgia- and Florida-only putative

18  subclasses. The Court has held that, "when assessing the merits of an objection to a

19  class action settlement, [it should] consider the background and intent of objectors

20  and their counsel, particularly when indicative of a motive other than putting the

21  interest of the class members first." *Dennis v. Kellogg Co.*, No. 09-1786, 2013 WL

---

23  [7] *See, e.g., Couser v. Apria Healthcare, Inc.*, 13-0035 (C.D. Cal. Oct. 27, 2014),
    ECF No. 45 (preliminary approval of TCPA settlement providing for "a cash
24  payment, forgiveness of debt owed to Apria, and/or a voucher for future
    account balanced with Apria"), given final approval on March 9, 2015);
25  *Gutierrez v. Barclays Group*, No. 10-01012 (S.D. Cal. March 12, 2012) (final
    approval of TCPA class action where class members were given an estimated
26  $100 credit on their credit card balance with Barclays as part of the settlement).
    [8] *See In re Enhanced Recovery Co.*, No. 13-2398 (M.D. Fla. July 29, 2014), ECF
27  Nos. 123, 124 (final approval for settlement which provided only injunctive
    relief for class); *Grant v Capital Mgmt. Servs., LP*, 2014 WL 888665, *2, *8-9
28  (S.D. Ca. 2014) (final approval of class settlement under TCPA providing only
    injunctive relief).

6055326, *4 n.2 (S.D. Cal. Nov. 14, 2013) (citation, punctuation omitted; quoted by, *e.g.*, *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, *14 (S.D. Fla. Sept. 14, 2015)). The Court's approval of the Settlement will foreclose Objectors' counsel from deriving attorneys' fees from representing their putative subclasses. Objectors cannot credibly deny that contingency has motivated their attacks on Plaintiffs' class definition or the Settlement; that motivation must in turn color the analysis of the Objection. *Cf. Lee*, 2015 WL 5449813, at *14 (while assessing objectors' motives, noting that objectors' counsel represented plaintiff "in a competing class action [that was] stayed pending approval of the Settlement here," and had "clear financial interest in . . . reject[ing  settlement] in order to leverage fees from Class Counsel"); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1315 (S.D. Fla. 2007) ("small and vocal minority of class members who have objected are fueled by would-be class counsel in competing lawsuits, so their objections are suspect").

## V.   Class Counsel Do Not Owe Any Duty to Acquiesce to Objectors' (or Other Class Members') Positions on the Settlement

Objectors argue that Plaintiffs' counsel are ethically conflicted because they concurrently represent class members with adverse interests (including the Objectors), and are "ignoring their Fiduciary Duty to the *Bartlett* and *Harvey* Putative Classes." (ECF No. 364 at 11:16-12:7.) Objectors had an opportunity with work with Class Counsel on a national class early on; it is regrettable that they choose instead, now that the Settlement is complete, to make groundless accusations against Class Counsel to compensate for their weak legal position. If Objectors were correct, then *every* objection to a class action settlement would reflect an ethical conflict by class counsel. That is not so. It is well-established that "courts cannot mechanically transpose to class actions the rules developed in the traditional lawyer-client setting context[.]" *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 163 (3d Cir. 1984) (Adams, J., concurring) (quoted, followed by

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999)).[9] Ninth Circuit courts have accepted this logic as well. *See White v. Experian Info. Sols., Inc.*, 803 F. Supp. 2d 1086, 1102 (C.D. Cal. 2011) (rejecting argument that would "cavalierly import[] traditional attorney disqualification rules into the class action context"; citing, following *Lazy Oil*; *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14), *rev'd on other grounds and remanded sub nom. Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013).[10] Indeed, courts have specifically foreclosed Objectors' gambit here (i.e., the argument that, because Class Counsel owes a fiduciary duty to all Class members, they cannot ethically continue to advocate for a settlement that is ostensibly adverse to Objectors' interests):

> In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great "leverage," but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations.

*Lazy Oil*, 166 F.3d at 589 (quoted, followed by *White*, 803 F. Supp. 2d at 1103). Rather, "[t]he primary responsibility of class counsel is to represent the entire class as it believes appropriate. . . . Class counsel must make their own determinations about the appropriate course of action, taking full account of their fiduciary

---

[9]   *See also In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 19 (2d Cir. 1986) ("traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation"); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("duty owed to the client sharply distinguishes litigation on behalf of one or more individuals and litigation on behalf of a class[;] dut[ies] of counsel in non-class litigation . . . cannot be imported wholesale into a class action setting"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 114-15 (D.D.C. 2013) ("rules of professional conduct that have been developed to apply to traditional attorney-client relationships outside the class action context cannot be applied mechanically to conflict of interest problems that arise in class action litigation"; citing *Lazy Oil*, 166 F.3d at 589-90; *In re Agent Orange*, 800 F.2d at 19-20).

[10]   *Cf. In re Oracle Sec. Litig.*, 136 F.R.D. 639, 643 (N.D. Cal. 1991) ("[c]ourts should not mechanically transpose to class actions the rules developed in the traditional lawyer-client setting context"; citation, punctuation omitted; somewhat different context).

obligation to the class as a whole." *Rodriguez v. West Pub. Corp.*, No. 05-3222, 2007 WL 2827379, *13-14 (C.D. Cal. Sept. 10, 2007) (quoting Fed. R. Civ. P. 23(g)(1) advisory committee's note on 2003 amendments (under Rule 23(g), "obligation of class counsel [is] to represent the interests of the class, as opposed to the potentially conflicting interests of individual class members"; other citations omitted).

> Because the "client" in a class action consists of numerous unnamed class members as well as the class representatives, and because the class itself often speaks in several voices, it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole.

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 932 (E.D. Mich. 2007) (quoting *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981); punctuation omitted). Class Counsel have fulfilled their fiduciary duties in this case; Objectors' aspersions are particularly ill-considered.

The Objection also insinuates at points that attorneys' fees improperly motivated Plaintiffs' counsel to settle in violation of their fiduciary duties. (ECF No. 364 at 4:11-5:7; 11:16-12:7.) Again, it is regrettable that Objectors' counsel chose slinging mud at Class Counsel over productively working with Class Counsel on the Settlement. They would, at the very least, be better informed about the Settlement's terms, which provide for a single common fund from which both the Class and Class Counsel will be paid. This structure, combined with a percentage fee award, ensured that Class Counsel had every incentive to make the common fund as large as possible. Where fees are set as a percentage of a common fund, it "aligns the interests of counsel and the class by allowing class counsel to directly benefit from increasing the size of the class fund." *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (collecting cases). "Awarding fees as a percentage of the common fund or settlement fund provides an incentive to attorneys to obtain large victories." *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004). *See also In re Brooktree Sec. Litig.*, 915

F. Supp. 193, 196 (S.D. Cal. 1996) (endorsing contention that "percentage-of-the-fund method aligns the interests of class counsel and the class"). Given this fee structure, Class Counsel had every incentive to maximize the common fund available to the Class.

**V.     Conclusion**

For all the foregoing reasons, the Parties respectfully request that the Court overrule the Objection and enter an order preliminarily approving the proposed Settlement.

Dated: June 6, 2015          By:     _____s/Ethan Preston_____

James O. Latturner
EDELMAN COMBS LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
info@edcombs.com
(312) 739-4200 (telephone)
(312) 419-0379 (facsimile)
info@edcombs.com

Ethan Preston (263295)
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiffs and the Proposed Class*